[Civ. No. 14005. First Dist., Div. One. Apr. 26, 1949.]

Estate of EDGAR LAURENCE DOW, Deceased. MAXINE PATRICIA HUTCHINSON, Appellant, v. MAXINE B. DOW, as Administratrix With the Will Annexed, etc., Respondent.

William A. White for Appellant.

Jesse H. Miller for Respondent.

BRAY, J.—There are two appeals by appellant, a daughter of decedent, from three orders of the probate court: (1) from the minute order dated March 29, 1948, denying the petition for accounting, for revocation of letters of administration, and for the appointment of a disinterested administrator; (2) from the decree settling the first account of the administratrix and supplement thereto, dated April 13, 1948; and (3) from the order dated May 13, 1948, granting respondent, widow of decedent, a family allowance.

## No Appeal Lies From Minute Order

Pursuant to section 522 of the Probate Code, appellant filed a "Petition for an Order Directing an Accounting for the Revocation of the Letters of Administration of

Maxine B. Dow, and for the Appointment of a Qualified and Disinterested Administrator with Will Annexed.'' Respondent appeared in opposition to this petition, although she did not file any demurrer or answer. Section 522 provides that she "may" have done so. The section further provides "the issues shall be heard and determined by the court." Section 1230 provides: "All issues of fact joined in probate proceedings must be tried in conformity with the requirements of the rules of practice in civil actions. . . . If no jury is demanded, the court must try the issues joined, and sign and file its decision in writing, as provided in civil actions. . . ." In *Estate of Pendell*, 216 Cal. 384 [14 P.2d 506], it was held that on a petition for removal of the executors and the appointment of an administrator with the will annexed, the above quoted language, which was then in sections 1716 and 1717 of the Code of Civil Procedure, requires written findings in the determination of issues of fact in probate proceedings, and particularly, in the determination of petitions of the kind in question. See *Estate of Withington*, 60 Cal.App.2d 105 [140 P.2d 491], to the same effect with reference to a petition for the removal of an administrator with the will annexed.

The court here made no findings of fact. All that appears in the record concerning its action on the petition is the minute order of March 29, which reads: "Petition of Maxine P. Hutchinson, to revoke letters of administration. DENIED." In *Trubowitch* v. *Riverbank Canning Co.*, 30 Cal.2d 335 [182 P.2d 182], it was held (p. 347): "It is settled that where findings are essential there is no rendition of final judgment until findings are signed and filed (*Supple* v. *Luckenbach*, 12 Cal.2d 319 [84 P.2d 52].)" In construing rule 2(b) (2) of Rules on Appeal, which applies to appeals from minute orders, we held in *Hirschberg* v. *Oser*, 82 Cal.App.2d 282 [186 P.2d 53], that an appeal from the minute order did not lie if the proceeding was one in which a further or formal order was required. In the case at bar, as findings of fact are required, there could be no judgment until they were filed, and hence no judgment from which to appeal. As there is no appeal from the minute order, the appeal attempted to be taken therefrom must be dismissed.

This leaves two appeals to be considered: (1) from the order granting respondent a family allowance; and (2) from the decree settling the first account of the administratrix.

## History

Before considering the contentions raised, it is advisable to have in mind the history of the estate and the parties. In 1916, decedent, then a wealthy man 50 years of age, married respondent, then 17 years of age. One child (appellant) was the issue of this marriage. Decedent had children by a prior marriage. Decedent and respondent lived together until his death in 1930. The executor of decedent's will was the American Trust Company, which served as such executor from January 7, 1931, to April 5, 1932. (E. L. Dow, Jr., a son of decedent by the prior marriage, was also named as coexecutor, but declined to act.) On that date the executor resigned and Hiram W. Johnson, Jr., was appointed administrator with the will annexed, serving until 1937, when he resigned and the widow (respondent) became the administratrix with the will annexed. At its inception, the estate was insolvent, and remained so for many years. Whether it is now solvent is one of the issues in the case. In January, 1931, there was set aside to the widow as exempt from execution, certain household furnishings inventoried at $500, and she was granted a family allowance of $1,000 per month from the date of the death of decedent to the return of the inventory. From this, she received $12,000. Household furnishings, which were evidently worth far more than their appraised value, and jewelry, were left in the will to the widow. The American Trust Company as executor obtained a declaration by the court that this property belonged to the widow personally. From the sale of this property and the one year's family allowance, the widow supported herself and the daughter, who was 13 years of age at her father's death, keeping the daughter in a private school until she finished high school grades.

During these years, the widow, in her personal capacity, pressed two claims involving the estate. In one action, referred to as the "Sutro" suit, she recovered a judgment against the then administrator of the estate, which now, together with interest, totals around $28,000.

The second claim concerned an alleged community property interest in some mining property, the "Mayflower Mine," title to which was in the name of E. L. Dow, Jr. In 1935, a settlement was entered into by Mrs. Dow, E. L. Dow, Jr., and the estate, approved by the probate court, under which each of the three parties mentioned received a one-third interest in the mine. The compromise agreement also provided that the

estate should have certain shares of stock which had been claimed by E. L. Dow, Jr. The will provides for a testamentary trust, the income to be paid two-thirds to the widow and one-third to the daughter until January, 1952. Then the trust terminates, the corpus going one-third to the widow, one-third to the daughter, and one-third to the heirs of the decedent by the prior marriage. Under the compromise agreement above mentioned, it is claimed that E. L. Dow, Jr. and Gerald H. Dow surrendered to the widow and daughter all their claims under the will. The will contains a spendthrift clause, which it is not necessary to construe here.

When Mrs. Dow became administratrix in 1937, she selected her daughter's husband as her attorney. He remained such until about 1946, when Mrs. Dow claims he refused to file a petition for family allowance. The reasons for this refusal are disputed. Mrs. Dow then replaced him with another attorney. In 1946, Mrs. Dow succeeded in settling claims against the estate amounting to around $18,000 for a sum around $4,000. About 1943, a purchaser was found for the mine property, who agreed to pay $300,000 for full title, payable $15,000 per year. The first payment was made in 1946, and a second payment later. No other payments have been made.

The most important asset of the estate is 4,956½ shares of stock in River Farms Company, of which decedent was president at the time of his death. It is one of the largest reclamation projects in the world, located at Knight's Landing, near Woodland. The land, consisting of about 13,900 acres, is primarily devoted to the cultivation of grain and other agricultural products by the corporation itself. The stock has never paid any dividends; there seems some prospect now of dividends. In the last five years debts have been reduced by $850,000 and amount only to $25,000. Gross earnings for 1947 were $947,000, which was double the earnings the year before. Although the market price per share had been as low as 50 cents at the time of the original appraisement in the estate, it had risen to $12.50 or $15 at the time of the first hearing. At the hearing in May, 1948, Mrs. Dow testified that the most recent sale had been at $30 per share.

### Family Allowance

No application for family allowance, other than the pre-inventory one above mentioned, was made until April, 1947, when the administratrix petitioned for an allowance of $1,000

per month, retroactive to December, 1931, when the first allowance terminated. On the hearing of this petition the court granted an allowance of $500 per month, restricted to six months beginning July 1, 1947. No appeal was made from this order.

On April 26, 1948, a third petition for family allowance was filed and on May 13 the court made its order allowing $500 per month commencing January 1, 1948, and continuing "until the further order of this Court." Appellant appealed from this order, contending: (1) That the time for settling the estate had arrived and therefore the court had no jurisdiction to grant a family allowance. (2) The second allowance, in 1947, is res judicata as to the claim for family allowance pending distribution. (3) The allowance was waived by the administratrix. (4) The court abused its discretion in granting the allowance as it is unreasonable, exorbitant and improvident.

### WAIVER

■ This contention is based principally upon the contention that in the compromise agreement concerning the Mayflower mine, the widow expressly waived all rights except the right to receive under the will. However, an examination of that agreement does not show such a waiver. The only concession of any kind by Mrs. Dow appearing in the agreement is the following: "Said Maxine B. Dow hereby agrees that she has no community interest whatever in any of the property or assets of the Estate of Edgar L. Dow, deceased, and that all of said property and assets constitutes his separate property and estate." There is the following language: "Said first party, Maxine B. Dow, shall have the right to participate in the distribution of the Estate of Edgar L. Dow, deceased, in accord with the terms of the will of said deceased, and no objection of any kind shall be made to such participation." The first paragraph above mentioned does not in any sense constitute a waiver of the widow's right to a family allowance.

■ Nor does the second paragraph mean, as contended by appellant, that Mrs. Dow thereby agrees that her only right in the estate is to participate in the distribution. *Estate of Howe*, 88 Cal.App.2d 454 [199 P.2d 59], cited by appellant in support of her contention that the above quoted language constituted a waiver of the right to family allowance, is actually authority for the construction we give. There, the court held that an agreement signed by the widow stipulating the amount of community property in the estate and the share

she was to receive of it, "over and above, the amounts coming to her under the provisions of the" will, did not constitute an agreement that any portion of the community property share to be received by her should be charged with any part of the family allowance which she had received. In *Estate of Yoell*, 164 Cal. 540 [129 P. 999], a separation agreement signed by the husband and wife provided among other matters that "all claim as such heir, or as surviving husband and wife, respectively . . . is hereby expressly waived." (P. 545.) In holding that this constituted a waiver of the surviving wife's right to a family allowance, the court said (p. 551): "The wife covenants that she has renounced and waived all claim which she has or may have as *heir* of the husband or as his *surviving wife*. It is only as heir and surviving wife that she could make her demand for a family allowance, a demand which she has solemnly renounced." It is obvious that there was no such waiver in the case at bar. As said in *Estate of Gould*, 181 Cal. 11, 14 [183 P. 146]: "An examination of the cases wherein it has been held that the wife had waived her statutory rights as widow reveals the fact that in each case the words used clearly imported an intention to surrender the very right afterward claimed." ▆ Nor does the fact that the widow waited several years after the return of the inventory before applying a second time for a family allowance constitute any waiver by her or bar her from making such application.

## FURTHER CONTENTIONS

The three other contentions concerning the family allowance order will be considered together. It is conceded that the court cannot grant a new family allowance if the estate is ready for distribution, and that where a prior order is made restricting the allowance to a limited period, the court cannot thereafter grant a family allowance unless conditions are changed since the prior order was made. (*Estate of Nelson*, 167 Cal. 321 [139 P. 692]; *Estate of Boselly*, 179 Cal. 218 [176 P. 45].) The court apparently considered when the second order was made that the estate was in a condition to be closed within six months. The questions to be considered are whether there is a changed condition and whether the estate is ready to be closed. Since the making of the second order an action has been filed against a title company as trustee for the estate, Mrs. Dow and E. L. Dow, Jr., and against Mrs. Dow and E. L. Dow, Jr., individually, by the McCormick

estate, to quiet title to two mining claims which constitute the gateway to the Mayflower mine. Respondent is of the opinion that this suit was instigated by the buyer, who is in arrears in the payment of the purchase price, to force a reduction in the price of the mine. The trustee has refused to defend unless indemnified for its expenses. Respondent and E. L. Dow, Jr. have retained a local lawyer to defend and he has been instructed to declare a forfeiture of the purchase agreement for failure of the buyer to make payments in accordance with its terms. Thus, there is a foreclosure proceeding, as well as the suit pending. At the time the court made the third allowance order, appellant was threatening respondent with litigation in a separate proceeding. This threat has been made good. On August 3, 1948, appellant filed in the superior court an action against Mrs. Dow both individually and as administratrix for (1) the revocation of her letters of administration; (2) an order reopening every account heretofore filed; (3) appointment of a disinterested administrator and for closing the estate; (4) the delivery to the new administrator of assets belonging to the estate which appellant claims respondent is withholding; (5) an order setting aside the judgment in the "Sutro" suit, and the judgment obtained by respondent based upon the compromise entered into with reference to the Mayflower mine.

Appellant contended below that the administratrix was purposely delaying the administration of the estate in order to mulct it by a prolonged family allowance, and by increasing interest on her claims against the estate. Appellant testified that Mrs. Dow had told her she would do so. Mrs. Dow denied making such statement. All these matters were before the court and apparently the court did not believe that such was the purpose of the administratrix. *Curtis* v. *Schell*, 129 Cal. 208 [61 P. 951, 79 Am.St.Rep. 107], cited by appellant, is not in point, as it was based upon a situation in which on an application for a family allowance the widow fraudulently concealed material facts from the court. Whether a change of conditions has resulted, and the propriety and extent of such change, are matters committed to the discretion of the trial court. (*Estate of Boselly, supra* [179 Cal. 218].)

*Estate of Coffin*, 16 Cal.App.2d 532 [61 P.2d 81], is not controlling here. That case held (p. 534) that in determining what is a reasonable family allowance "it is competent for the court to determine what is a reasonable time within which

the estate should be settled and to fix the amount of the allowance accordingly,'' and then held that the petition of the widow for an additional allowance after the expiration of the time fixed ''gave no good reason why the settlement of the estate had been delayed beyond'' the period expressed in the order. Here the court held in effect that the delay in closing the estate (which it likewise found to be a necessary one), was good reason for a further family allowance.

In *Estate of Ricaud,* 57 Cal. 421, it was held that the fact that the real property claimed to belong to the estate was involved in litigation justified the court in holding that the estate was not ready for distribution. (See, also, *In re Burdick,* 112 Cal. 387 [44 P. 734].) In our case, although the title company, the present trustee or the testamentary trustee, might be able to conduct the litigation concerning the Mayflower mine, it was within the discretion of the trial court to hold that it was the duty of the administratrix to see this litigation to its conclusion. Moreover, the action now pending between appellant and respondent hereinbefore referred to, is an action for respondent's removal as administratrix and for a return to the estate of assets which it claims respondent is withholding from it.

The trial court, in its discretion, held, in effect, that the foreclosure proceedings, the quiet title suit, and the threatened suit by appellant against respondent (which has materialized) constituted a change in conditions since the preceding allowance order was made. In addition to these matters there was the unpaid judgment held by respondent against the estate, unpaid attorneys' fees and administratrix's fees, and a legacy to respondent under the will. The court, in its discretion, held that by reason of all of these, the estate is not in a condition to be closed. We cannot say that the court abused its discretion in either particular.

### The Allowance Is Not Unlimited or Unreasonable

Appellant contends that the allowance is unlimited and unreasonable. It is not without limit. Being merely ''until the further order of this Court,'' it may be terminated at any time. The court stated at the time of making the order appealed from, that ''if there is any unnecessary delay we will stop it.'' Nor can we say as matter of law that it is unreasonable. The probate court had before it the circumstances of the estate, the widow's station in life (at the time

of her husband's death the household had four servants, a town car and a chauffeur), the condition of her health (she is suffering from a complicated ailment of both eyes), her lack of income, the prior awards, and her needs generally.

■ Appellant contends that the estate is insolvent and that the payment of the family allowance for any extended period, plus the attorneys' and administratrix's fees, and the claim and legacy of the widow, will eat up the value of the estate. The testimony on this subject is conflicting. According to the widow, the value of the stock in the River Farms Company is $30 per share (at one time during the administration of the estate it had been as low as 50 cents per share), a total value of over $148,000; there was some $8,800 in the bank, plus a one-third interest in the Mayflower mine, which seems to be doubtful value. This evidence supports the court's conclusion that the estate is not insolvent and that a family allowance granted will not impoverish the estate. The action of the appellant in bringing the suit against the administratrix (which suit could have been brought just as well several years ago) in nowise hastens the closing of the estate.

## DECREE SETTLING FIRST ACCOUNT

From her appointment in 1937 until after appellant filed the petition for order directing an accounting and for the revocation of letters of administration heretofore mentioned, the administratrix filed no account. On July 12, 1947, she filed a "First Accounting of Maxine B. Dow, Administratrix with the Will Annexed, and Sixth Accounting of Representative of Estate." Appellant filed exceptions to this account. On February 26, 1948, the administratrix filed a "Supplement to First Account of Maxine B. Dow as Administratrix with the Will Annexed." After a hearing the court, on April 13, made its decree settling the first account of the administratrix and supplement thereto, in which it found the account and supplement to be true and correct, ratified and approved each item, and settled, allowed and approved the account and supplement. On appeal from this decree, appellant makes several contentions which will be considered seriatim.

### THE ACCOUNT IS NOT INSUFFICIENT IN FACT AND IN LAW

■ The contention that the account is insufficient seems to be based partially on the form of the account and partially on the fact that when it was first filed, Mrs. Dow's counsel announced that it was filed "for the primary purpose of

showing the Court the assets that are on hand'' in connection with the then application for family allowance. However, counsel announced that an opportunity would be afforded appellant's counsel to object to the account when a petition for its approval was filed. This opportunity was given later, and objections were made and considered by the court, but at no time was an objection made to the form of the account. These specific objections will be taken up later, but it is now too late to attack the form of the account. The account sets forth the moneys received and paid out by the administratrix, together with a list of the assets of the estate. The court has a broad discretion in passing on accounts of administrators. We cannot say that as to the form of this account the court abused its discretion in approving it, particularly as no objection on that score was made to the probate court.

### Vouchers

Section 925 of the Probate Code provides that ''Except as hereinafter provided'' vouchers must be filed for all payments made by the administrator. No vouchers were filed. In *Estate of Hedrick*, 127 Cal. 184 [59 P. 590], it was held, in effect, that the probate court was correct in disallowing contested items for which the administrator failed to produce vouchers. It is apparent, however, from a reading of the case, that the lack of vouchers was called to the attention of, and considered by, the probate court. In our case, the absence of vouchers was not objected to, or called to the attention of the court. Section 929 of the Probate Code, which is included in the phrase ''Except as hereinafter provided'' in section 925, provides: ''If it appears that debts of the decedent have been paid without verified claims having been filed or presented and allowed and approved, and it shall be proven that such debts were justly due, were paid in good faith, that the amount paid was the true amount of such indebtedness over and above all payments or set-offs, and that the estate is solvent, the court, in settling the account, shall allow the sums so paid.'' In view of this section, and particularly of the failure of appellant to call the probate court's attention to the absence of vouchers, the absence of vouchers is not fatal to the allowance of the account.

### Findings

Appellant contends that the decree settling the first account falls because there are no findings, citing *Estate of*

*Kauffman,* 63 Cal.App.2d 655 [147 P.2d 11]. But that case does not hold that findings are required in the settlement of an account. In that case, following a contest over certain accounts of the administrator, the judge filed a document referred to in the petition as the "memo." This document the court held to be merely the judge's opinion which the judge *intended* to be followed by "formal findings, decision and judgment." (P. 660.) It was comparable, said the court, "to the usual minute entries made by the clerk to guide in the preparation of a formal order." It pointed out that the only finding which the court is required to make is that service was made of notice of settlement of the accounts (in the case at bar such finding appears in the decree). Section 1200 of the Probate Code requires that the court shall so find "in its order." However, it held that the court might, as it did, require further findings. In *Estate of McPhee,* 156 Cal. 335 [104 P. 455, Ann.Cas. 1918E 899], the court said (p. 337): "Furthermore, it has been repeatedly decided that findings of fact and conclusions of law are not required in a proceeding for the settlement of an administrator's account. [Citing cases.]"

PARTICULAR ITEMS

The only specific items of the account which appellant attacks here are those hereinafter mentioned:

█ Payment of $56.66 to Lillian Hansen. No objection in the probate court was made to this item, nor was the administratrix questioned concerning it. It cannot be raised here for the first time. (*Estate of Rohrer,* 160 Cal. 574 [117 P. 672, Ann.Cas. 1913A 408].)

█ A withdrawal on July 20, 1946, of $1,000. This the administratrix explained was the twelfth payment under the first family allowance. The court allowed $1,000 per month from date of death, December 4, 1930, until the return of the inventory, December 21, 1931. The administratrix in 1931 drew the allowance for only 11 months. She drew the twelfth payment July 20, 1946. This withdrawal was within the amount allowed in the original order. Delay in collecting the amount awarded as family allowance does not forfeit the right to it. (*Estate of Nelson,* 167 Cal. 321 [139 P. 692]; *In re Welch,* 106 Cal. 427 [39 P. 805].)

█ There is an entry "12/23/46 To Maxine B. Dow—reimburse for advances as settlement in full of creditor's claim of S & G Gump Company: . . . 759.60." Mrs. Dow explained that the Gump company had a claim of $485 or thereabouts,

against the estate, for an indebtedness incurred during the life of the decedent, and for which the decedent was liable. In 1935 or 1936, Gumps held one of her valuable rugs for this indebtedness. To get her rug back she signed a statement that the estate would pay in one year. When it did not pay, Gumps obtained a judgment against her (apparently a personal judgment) which with costs and attorneys' fees amounted to $759.60, which she paid. The probate court held that this was the indebtedness of the estate and that she should be reimbursed for paying it. Under the testimony, we cannot say the court erred.

 Appellant contends that the administratrix has retained certain objects of art, and unusual items of furniture, which she has failed to inventory or account for. Respondent contends that these are included in the property set aside to her by court order early in the administration. Appellant now contends that these items were not included in that order or in the inventory. We cannot find that this matter was an issue in the lower court. In her formal exceptions to the account no mention is made of this subject. We can find no place in the record where the court was asked to determine whether or not these articles were included in the order. The record shows that at the hearings before the court everyone assumed that they were so included. Mrs. Dow was then questioned at great length concerning the sale of the various articles and the proceeds therefrom. There is nothing in the record before us, or, so far as we can find, brought to the attention of the probate court on the proceedings involved here, to show that they were not included in the order.

 Appellant contends that respondent has failed to account properly for sums totaling $19,636.38, which it is claimed are proceeds from the mine. No such contention was made below. In fact appellant contends that $1,908.46 of that sum is due because of certain findings in the trial court in the Mayflower mine case where the court entered judgment pursuant to the compromise agreement, and that "The probate department has taken no action based upon said findings of the trial department and no copy of said findings has been filed in the estate proceeding." Since these findings were not filed in the probate court, nor any of the contentions concerning the $19,636.38 called to the court's attention, no issue was raised over this question. Respondent explained the items of receipt and expenditure concerning the mine

shown in her account, and concedes that due to an accounting made in another proceeding concerning adjustment of taxes and assessments on the mine, she owes the estate $262.55 and E. L. Dow, Jr., owes it $115.80, which amounts can readily be taken care of in her next account.

The purported appeal from the minute order of March 29, 1948, is dismissed. The decree settling the first account of the administratrix and the supplement thereto, dated April 13, 1948, and the order for family allowance, dated May 13, 1948, are affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied May 26, 1949, and appellant's petition for a hearing by the Supreme Court was denied June 23, 1949. Carter, J., and Schauer, J., voted for a hearing.