174 Cal.App.2d 764 (1959)
Estate of JESSIE LEE TOLER, Deceased. EDWARD J. GUIRADO, as Executor, etc., et al., Objectors and Appellants,
v.
BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), as Executor, etc., Petitioner and Appellant.
Civ. No. 5925. 
California Court of Appeals. Fourth Dist. 
Oct. 27, 1959.
 Harold B. Newrock and Clyde C. Shoemaker for Objectors and Appellants.
 Turpit, Drennen & Thompson, Wayne E. Thompson and Arch E. Drennen for Petitioner and Appellant.
 SHEPARD, J.
 Jessie Toler died testate on September 26, 1946. The Bank of America National Trust and Savings Association was appointed executor of her estate. The estate was appraised at $186,657.11, the chief asset being a citrus ranch valued at $130,000. Notice to creditors was published and claims totaling $2,566.20 were ultimately paid. On May 23, 1947, an order was made by the court pursuant to petition authorizing the executor to carry on the farm business of deceased until the further order of the court. In 1953, oil and gas leases were entered into by order of court. In 1954, the ranch properties were sold with a net return of $290,000.
 On December 19, 1955, Benjamin Edward Toler, life tenant legatee of all of the residue of the estate, filed through his guardian his petition for preliminary distribution of $200,000 on account. Substantially, the only other legacies were two $5,000 specific bequests and the remainder interest after the termination of the life estate. Objections were filed by certain remaindermen, and after a full hearing on the petition and objections the trial court found that the allegations of the petition were true; that all claims and taxes had been paid; that the two bequests of $5,000 had been paid; that as of December 15, 1955, the executor had on hand $308,934.69 of which $307,013.37 was cash, and ordered $200,000 distributed *768 to the guardian of said life tenant with trust deposit restrictions for bond reduction purposes. The distribution was for the natural life of said legatee. The trial court in that order refrained from making any allocation of principal and income, and likewise refrained from making any statement on the rights of the remaindermen in futuro after the death of said life tenant. That order has become final (Estate of Toler, 49 Cal.2d 460 [319 P.2d 337]). The pertinent facts relating to the portions of decedent's will here under consideration are therein sufficiently set forth and a repetition thereof is unnecessary.
 The first account current was filed on February 10, 1949, covering the period from the commencement of the administration to January 6, 1949, and was approved February 28, 1949. That order likewise appears to have become final.
 The second account current was filed December 9, 1955, covering the period from January 6, 1949, to April 27, 1955. On the same day there was filed a "Petition for Final Distribution and for Instructions" which referred to and by reference made the second account current a part thereof. On December 22, 1955, the executor filed its supplement to the second account current and report. On March 9, 1956, the executor filed its "Final Account Current and Report and Amendment to Second Account Current and Report." Timely objections and exceptions were filed as to all these last mentioned accounts, reports and petitions. On March 7, 1957, the court entered its "Order Settling Final Account, Fixing Attorney Fees and Executor Commissions, Determining Income and Principal Accounts and Instructions for Distribution." By its order the trial court disposed of the accounts, petitions for fees, commissions, objections, exceptions and final distribution.
 It found, among other things, that the accounts are true and correct; that the executor was not under the duty to sell the real property prior to the time the actual sale was made; that all capital gain is a part of the residue and not income; that expense of operations should be charged against income; that receipts from oil and gas leases are income; that in any year where there was no net income property taxes should be charged against the residue; that all expenses of administration, estate and inheritance taxes and income taxes due from decedent at death, and capital gain taxes should be charged to residue; that payments to the life tenant for services should be charged to ranch operations but all other advancements to him should be charged to income. *769
 The court ordered, among other things, that all income be determined on an annual basis and that it bear interest at 4 per cent after the year during which it was received and up to date set for hearing the petition for final distribution. It was further ordered that all cash in the hands of the executor after July 1, 1956, bear interest at 2 per cent per annum as provided by section 920.5 of the Probate Code. It ordered statutory commissions, it allowed $9,000 extraordinary fees for the executor, $8,000 extraordinary fees for the executor's regular attorney, and $4,000 special fees to a separate attorney engaged to try the contests, subject to this appeal. It ordered that one-half of said $4,000 is to be paid by the executor from its extraordinary fees and one-half thereof to be borne by the residue of the estate. It found the executor in possession of $250,604.92 plus $786.84 accounts receivable. It ordered certain physical property originally inventoried at $450 to be charged off on the ground that it had no substantial value. Oil and gas leases were listed at a nominal $3.00. It fixed the total income distributable to the life tenant at $41,994.44 and recited that $16,754.19 of this had already been paid. (The record shows that of this amount already paid, $15,000 was paid on April 5, 1956, pursuant to a stipulation without prejudice to the rights of any party.) It ordered a total of $3,891.92 interest payable to the life tenant at 4 per cent on delayed annual income payments and surcharged the same against the executor by ordering it deducted from commissions payable to the executor. It found that after the payment of expenses, commissions, fees, special bequests with interest thereon, and advances to the life tenant, there remained on hand the sum of $216,615.64. It found that the total income payable to the life tenant is the sum of $41,994.44 of which $16,754.19 had already been paid, leaving a balance of $25,240.25 income payable to the life tenant, and $191,375.39 corpus. It then defines the fractional interests of the remaindermen and orders distribution subject to individual adjustments for closing expenses and tax possibilities accruing in the interim.
 Appeals from certain portions of this order are taken by Susan E. Ponder individually, as one of the remaindermen, and as guardian of said life tenant; by the executor, and by Edward J. Guirado as executor of the estate of Minnie Carter, another of the remaindermen. It will be necessary to deal with most points of appeal raised by the briefs separately.
 [1] The first contention by appellant Ponder is that the court did not acquire jurisdiction to proceed with final distribution *770 because there was no final account filed, there was not filed with the final account a petition for final distribution, and no notice of hearing of a final account nor a petition for distribution given, as required by Probate Code, section 926. A finding of due notice is ordinarily essential to show jurisdiction of record. (Estate of Kauffman, 63 Cal.App.2d 655, 659 [3] [147 P.2d 11].)
 [2] First it should be noted that at the time of the trial of the objections to the account the objectors devoted a goodly portion of their opening discussions to assuring the trial court that the objectors were there to present a hearing on the final account, that they wanted a final distribution and were prepared to proceed on the basis of a hearing being one on final account and on a petition for distribution. Objector Guirado was present during all of this discussion and voiced no dissent to the matter proceeding as so suggested. All parties did thereafter proceed on the basis of the hearing being on final account and for distribution. It would appear, therefore, that the grounds of adequate notice were waived by all appellants herein. (Estate of Pailhe, 114 Cal.App.2d 658, 661 [3] [251 P.2d 76].) [3] Furthermore, from the record, it appears that notice of the hearing of the accounts was duly given as required by Probate Code, section 926, although the word "final" did not appear in the original notice. We are of the opinion that appellants, in view of their announced attitude to the trial court on this matter at the time of the hearing may not now be heard to complain. (Estate of Pailhe, supra; Estate of Randall, 194 Cal. 725, 729 [4] [230 P. 445]; Estate of Olcese, 1 Cal.App.2d 72, 80-82 [4] [36 P.2d 215]; Estate of Reinhertz, 82 Cal.App.2d 156, 161 [5] [185 P.2d 858, 186 P.2d 755]; Estate of Kasson, 119 Cal. 489, 490 [51 P. 706].) A careful reading of cases cited to the contrary, such as Estate of Sheid, 122 Cal. 528 [55 P. 328], Estate of Ross, 180 Cal. 643 [182 P. 755] and Smith v. Westerfield, 88 Cal. 374 [26 P. 206], reveals that in such cases there was actual or potential and substantial prejudice to the objector by reason of the failure of notice. Fundamentally, the purpose of notice is to procure a fair hearing and where one has been had in which the parties objecting fully participated, formal notice has lost its necessity.
 [4a] The second contention of appellant Ponder is that the executor's accounts made no segregation of principal and income, and failed to properly compute or show probate income on the basis of annual accounting periods. It is true *771 that the original accounting in both the first and second current accounts was lacking in a considerable degree in annual accounting computations, as well as the identification by date of some items, and that the task of presenting the facts to the court in such a way that the court can readily understand it and make such allocations as the law required is a duty that devolves on the executor. But if the executor's accounts are such that the court cannot reasonably and readily understand them in order to perform its duty in making the allocations required by law, it is the right and power of the trial court to order such final accounting information to be furnished as may be necessary for the court to conveniently and adequately make its order allocating various sums as the law in a particular case may require. (Hirschfeld v. Cross, 67 Cal. 661 [8 P. 507].) Otherwise, the whole purpose of accounting might be defeated. [5] As was said in Estate of Dow, 91 Cal.App.2d 420, 431 [205 P.2d 698]: "The court has a broad discretion in passing on accounts of administrators." [4b] In order to perform the function of allocation the trial court did require and did receive additional supplemental accounts, information and exhibits which support the allocation of receipts and expenditure to corpus and income, as was ordered by the court.
 [6] Since the will was silent on the subject of accounting periods, it appears that the court acted correctly in choosing an annual accounting period and the executor, under the direction of the court, did perform its function of furnishing the additional factual information to enable the court to readily and conveniently make the necessary orders. (Estate of Platt, 21 Cal.2d 343, 351 [131 P.2d 825]; Estate of Roberts, 27 Cal.2d 70, 78, 79 [12, 10b] [162 P.2d 461].) If the trial court had been dissatisfied, it could have ordered further clarification.
 The third contention of appellant Ponder appears to be that the trial court should have allowed to her the expense of an accountant hired to analyze the accounts of the executor. She cites no authorities. [7] It is true that certain expenses may be allowed to a beneficiary who is conducting objections which may redound to the benefit of other heirs who have not appeared by counsel. (Estate of Bullock, 133 Cal.App.2d 542, 547 [2] [284 P.2d 960].) However, such an allowance is addressed to the sound discretion of the court in its application of equitable principles. (Estate of Plumer, 147 *772 Cal.App.2d 760, 763 [4] [306 P.2d 110].) [8] It appears from the record that the primary purpose of appellant Ponder's employment of an accountant was to enhance only the estate of the life tenant. It was not addressed to any degree to preserving a common fund for the remaindermen. This, as well as the other facts in the case at bar, convinces us that the trial court did not abuse its discretion.
 Appellant Ponder next contends that the court improperly determined income allocable to the life tenant, and that it should not have charged operational expense to income. Paragraph Fifth of the will, as to the portion with which we are here concerned, reads as follows:
 "All of the rest and residue of my estate, real, personal, and/or mixed, wherever situated, I give, devise and bequeath to my brother, Benjamin Edward Toler, for and during his natural life, with the right to the full use and benefit of all of the rents, issues and profits therefrom with the remainder over in fee to the following persons ..."
 [9] Ordinarily, where the will is silent on the subject of expenses the owner of the life estate will be held responsible for the upkeep of the improvements, against ordinary waste and for taxes, and a just proportion of extraordinary assessments benefiting the whole inheritance. (Estate of Dare, 196 Cal. 29, 41 [235 P. 725].) In our opinion, the "rents, issues and profits," in the absence of any other specification or explanatory material in the will, is substantially synonymous with the word "income" in a matter of the kind here at bar. [10] The word "income" has been construed to mean the difference between gross operative income and gross operative expense. (People v. Gustafson, 53 Cal.App.2d 230, 239 [6] [127 P.2d 627].) The common sense of this view has been put into statutory expression in a statute relating to principal and income as between tenants and remaindermen. (Civ. Code, 730.03.) It is there stated that " 'Income' as used in this chapter means the return derived from principal." [11] In our view, the court's action in the charge of operational expense to income was proper. Likewise, the charging of taxes to corpus in any year in which a loss occurred is amply supported by precedent. (Estate of Bothwell, 65 Cal.App.2d 598, 607 [6] [151 P.2d 298, 868].)
 [12] Since the accounting period was properly determined to run on an annual basis, the court correctly allowed to the life tenant 4 per cent interest on the annual amounts of income payable to him but remaining unpaid. However, such interest *773 should run in favor of the life tenant until distribution. (Estate of Platt, 21 Cal.2d 343, 350 [2] [131 P.2d 825].)
 Appellant Guirado contends the income from oil and gas leases should be credited 95 per cent to principal and 5 per cent to income. Contrary to the contention of appellant the will does authorize the executor "to lease, encumber and sell" the property of the estate. [13] The primary asset of the estate was the ranch property. The amounts received from oil leases, as far as the record shows, did not result in the finding of oil or gas or the withdrawal of any from the property. Its real effect was mere ground rent as distinguished from natural resource taking. Thus, there could have been no depletion of the corpus and there appears to us no reasonable cause to distinguish between the allocation of net income from the farm operations and the income from the oil lease. Estate of Smith, 16 Cal.App.2d 239 [60 P.2d 574] and Estate of Allen, 42 Cal.App.2d 346 [108 P.2d 973], cited by appellant, relate to the position of a third party advancing money or credit to the estate, and are not persuasive as to the point here in question. We see nothing in Civil Code, section 730.11, requiring a different construction.
 [14] We are unable to find any merit in the contention that the court should not have allowed a credit of $15,000 for that amount theretofore advanced to the life tenant. By its settlement of the accounts the court implicitly found that there was no unreasonable delay in the final settlement of the estate. It did find, under Probate Code, section 162, that the life tenant was entitled to interest at 4 per cent on the deferred annual income payments. Thus there accrued a total of $3,891.92 interest on the successive annual income for the years 1948 to 1955, inclusive, which income had the cumulative total of $41,994.44. By its order charging this interest against the executor individually, it is also implicit that the court found substantially with the life tenant's contentions, to wit, that there had been an unreasonable delay in the payment of the income. From an examination of the judgment and accounting evidence it appears that the trial court accepted the analyses shown by "Respondent's Exhibit 3." We cannot say the trial court's conclusion was without evidentiary support. The life tenant now apparently contends that because of delay in the payment of the $15,000 he was prevented from earning 3 per cent for a certain period. It will be noted that the trial court's order provides that all cash amounts unpaid at the time the final order was made (February 27, 1957) *774 shall bear interest at 2 per cent per annum until paid. We are unable to say that the court's foresight in this matter was unreasonable nor an abuse of discretion.
 [15] The imposition of surcharges in matters involving delay in the settlement of an estate or delay in payment of legacies or support lies within the sound discretion of the court. This is exemplified by the policies expressed by the Legislature, as well as by the courts, such as the matter of costs as set forth in Probate Code, section 1232. (Estate of Hart, 119 Cal.App.2d 310, 316 [8-9] [259 P.2d 703]; Estate of Wallace, 12 Cal.2d 476, 480 [2-3] [86 P.2d 95].) [16] This same policy is to be found in connection with the whole subject of the reasonableness and necessity of expenditures during administration, where the trial court is vested with a broad discretion which will not be disturbed on appeal except when abused. (Estate of Fraysher, 47 Cal.2d 131, 136 [9] [301 P.2d 848].) The evidence shows that at least some of the heirs advised with the executors that the best interests of the estate required the holding of the ranch property as a home for the life tenant. Further, while the trial court held, on sufficient evidence, that there was annual income payable to the life legatee, it does not appear that there were sufficient funds on hand to finally close the estate prior to the completion of the 1954 sale proceedings. Thus the exercise of the court's discretion respecting the delay in estate closure should not be disturbed on appeal.
 [17] Appellant Ponder also contends that fees for extraordinary services are exorbitant and unwarranted. Again the award of such fees lies within the sound discretion of the trial court. Under all of the facts of the case at bar we are unable to find as a matter of law that the court abused its discretion in the award of extraordinary fees. (Estate of Hardenberg, 18 Cal.App.2d 307, 310 [63 P.2d 1200]; Estate of Lampman, 15 Cal.2d 212, 219 [4] [100 P.2d 488].)
 [18] Appellant Ponder next contends that the trial court erroneously rejected her offer of proof that other parcels of property in the vicinity of the ranch belonging to this estate were sold at sums largely in excess of the price secured for this property. The estate ranch was sold under authority of the will, due return to the court was made, and an order of confirmation was had under Probate Code, section 757. This was an appealable order. (Prob. Code, 1240.) The record shows that no appeal was ever taken. The order became final and is not ordinarily open to question on final account. *775 (Estate of Gump, 16 Cal.2d 535, 549 [6] [107 P.2d 17].) The case of County of Los Angeles v. Faus, 48 Cal.2d 672 [312 P.2d 680], cited by appellant, related to eminent domain and the use of other sales in proving value on trial. It has no analogy to the case at bar.
 [19] Next appellant Ponder contends that the executor should be charged with the rental value of the residence portion of the premises. The evidence shows that the life tenant lived there until the property was sold, and that Minnie Carter, a one-half interest remainderman, also lived in the same residence, acted as his housekeeper and partially cared for him. There is some evidence that the life tenant desired to remain in the residence. This was the place where he had lived for many years with his sister, the testatrix. The case of Estate of Welch, 83 Cal.App.2d 391, 399 [7] [188 P.2d 797] was one in which the executrix herself occupied the property involved. Here the legatee of the property involved was the occupant along with the person whose occupancy, according to some of the evidence, was for the benefit of the legatee. We think the court's ruling was correct. (Prob. Code, 581; Estate of Dow, 82 Cal.App.2d 675, 681 [5] [186 P.2d 977].)
 The same reasoning applied to the items of repair and upkeep of the automobile. Furthermore, there is some evidence that the automobile was used in the farm operations and therefore these items were properly chargeable thereto.
 [20] Next appellant Ponder contends that certain items inventoried at a total value of $450 were improperly charged off. Some of these items of small value had been appropriated by relatives, some had been worn out in farm use. The trial court was evidently of the view that the small items appropriated by relatives of the deceased were taken without fault on the part of the executor, and that attempts to recover them would be more expense to the estate than they were worth. The farm tool showing of complete depreciation in service was sufficient. The point has no merit.
 [21] Respecting fee calculations it must be observed that the whole matter of adjustment of fees is within the sound discretion of the trial court, and the weighing of the basis of fee calculation against extraordinary fee is a part of that process. (Estate of Lampman, supra.) The trial court cut down the executor's claim for $18,000 for extraordinary services and allowed only $9,000. It reduced the claim for extraordinary *776 attorney's fees from $15,000 to the sum of $8,000, plus $4,000 for a special attorney in the trial of the account objections, but it adjusted even these last named special attorney fees by what amounted to a holding that $2,000 of the value of the services rendered by special attorney Blodgett was for services rendered to the executor as an individual. This was not, properly speaking, a surcharge. A clear confirmation of this is obtained by reading the minute order of November 20, 1956, which directly states that one-half of Blodgett's services were rendered to the executor personally.
 [22] Both appellant Ponder and the executor question the sufficiency of the findings respecting various orders of the court in connection with its settlement of the account and adjustment of fees and surcharges. Findings are not generally required on the settlement of accounts of administrators. (Estate of Dow, 91 Cal.App.2d 420, 432 [205 P.2d 698]; Estate of Machado, 186 Cal. 246, 251 [2] [199 P. 505]; Estate of Bell, 58 Cal.App.2d 333, 339 [6] [136 P.2d 804]; Estate of Tretheway, 32 Cal.App.2d 287, 293 [8] [89 P.2d 679]; Douglas v. Westfall, 113 Cal.App.2d 107, 114 [5] [248 P.2d 68].)
 The estate here in question has been already delayed settlement far beyond normal limits. Full enjoyment by the one who was the primary object of decedent's bounty has likewise been delayed. A full and fair hearing was had before the trial court. That court to the best of its human ability resolved the maze of claims, counterclaims and objections. No charge of dishonesty in accounts nor of fraud nor of misappropriation of funds are either made or proved. It is time this matter was closed finally.
 That portion of the order providing for interest at 4 per cent per annum on deferred payments of annual income to the life beneficiary is hereby modified, adding thereto the following: "Interest at a like 4 per cent per annum payable from the corpus of the estate, shall continue in favor of said life beneficiary after December 23, 1955, until date of distribution."
 The order is affirmed as modified. All other orders appealed from are affirmed. Each party shall bear his own costs.
 Griffin, P. J., concurred.