[Civ. No. 18661.   Second Dist., Div. Two.   Mar. 13, 1952.]

Estate of RUSSELL C. KIRKPATRICK, Deceased.   JULIA
   C. KIRKPATRICK, as Administratrix, etc., Respondent,
   v. JOHN RUSSELL KIRKPATRICK, Appellant.

Vernon Bettin and Roscoe R. Hess for Appellant.

Shelby Lee Chambers and John R. Barta for Respondent.

MOORE, P. J.—Russell C. Kirkpatrick departed this life
intestate in April, 1948.   He left a widow, Julia, and a son
by a former marriage.   In qualifying as administratrix of

the modest estate, the widow did not list the son as an heir although she knew of his existence. Having concluded that the estate was community property and that all of it passed to her, she considered the son was not an heir. June 15, 1948, she filed an inventory consisting of three items which were duly appraised as follows:

Buick sedanet, subject to loan of $1,593.40 ...... $2,150
Note and mortgage .......................... 2,100
Note and mortgage .......................... 1,000

Six months later she filed her first and final account and petition for distribution. She was therein debited with the amount of the inventory and credited with expenses of administration in the sum of $279.85.[1] Also, she had out of her own funds paid the only claim filed in the sum of $284.17 and she waived the statutory fee due her as administratrix. In January, 1949, the son, John Kirkpatrick, filed his objections to the last above mentioned account, recited family history and demanded that one half of the estate be distributed to him.

In June, 1950, Julia filed her "amended second and final account and petition for distribution" in which she charged herself with two additional items of interest collected on the two notes in addition to the same items as charged in the prior final account, making the total $5,528.25 and credited to herself the costs of administration and other necessary outlays

---

[1]Petitioner is entitled to the following credits:

### CREDITS

#### EXPENSES OF ADMINISTRATION

| | |
|---|---:|
| Filing fee | $ 10.00 |
| Certified Copies of Letters of Administration | 1.10 |
| Premium on Bond | 15.00 |
| Publishing Notice to Creditors | 7.50 |
| Appraiser's Fee | 6.25 |
| Attorney's Statutory Fee | 240.00 |
| TOTAL CREDITS | $279.85 |

#### ESTATE IN HANDS OF ADMINISTRATRIX

| | |
|---|---:|
| 1946 Buick Sedanet, subject to loan of $1,593.40 | $2,150.00 |
| Note and mortgage in sum of $2,100 executed November 3, 1947, by George W. Mirich and Ruth V. Mirich, 6% interest, covering real property in Polk County, Oregon | $2,100.00 |
| Note and mortgage in sum of $1,000 executed November 24, 1947, by John and Caroline Walter, 6% interest, covering real property in Marion County, Oregon. | $1,000.00 |
| | $5,250.00 |

for the benefit of the estate aggregating $2,136.09.[2] This account was by order settled leaving in the administratrix' hands for distribution the assets of the estate "after the payment of the credit due said Administratrix," one half to Julia and one half to John.

Although numerous grounds[3] are asserted as reasons for reversal, only a few require discussion. Of concern primarily are alleged errors made by the court below in (1) failing to surcharge the administratrix with the value of the use of an automobile left by decedent, (2) to surcharge herself with the equity of decedent in the car at the time of his death, and (3) in allowing her a credit with regard to payments made on a subsisting encumbrance against the vehicle.

The automobile, valued at $2,150 at decedent's death, was subject to a loan of $1,347.15. Respondent paid this obligation and refinanced the vehicle. At the time of her final ac-

---

[2] "Credit allowed by Order of Court on hearing of March
17, 1949 ................................. $ 324.02
Premium on Bond .............................. 15.00
Utter-McKinley, funeral expense advanced by Administratrix from her funds ................. ... 180.71
Inglewood Park Cemetery, burial, advanced by Administratrix from her funds .... ................ 144.50
Reduction of automobile loan, advanced by Administratrix from her funds ..... ................ 802.45
Statutory Attorney's fees (On $5,528.25) ............ 251.13
Statutory Administratrix fees (On $5,528.25) ........ 251.13
Difference of Value of Item B .................... 73.23
Difference of Value of Item C .................... 75.52

TOTAL CREDITS ............................ $2,136.09"

[3] ASSIGNMENTS OF ERROR

"1. Failure to surcharge administratrix with equity in automobile as of date of death.

"2. Failure to surcharge administratrix with compound interest upon equity in automobile, the value of wrist watch, not listed in the inventory.

"3. Allowance of attorney's fees and commissions based upon unpaid principal of two notes, estate's interest being only a half interest therein.

"4. Allowance to administratrix of credit of the difference between original loan on automobile and the reduced loan, such credit having the effect of allowing her sole, free use of the car for over two years.

"5. Failure to make specific finding upon the issues of bad faith, negligence and improper conduct of administratrix raised by the objections to the account.

"6. Approval of account without requiring administratrix to establish affirmatively the propriety of the charges and credits.

"7. Failure to find on specific issue of her failure to sell automobile, there being no sufficient evidence for implied finding that it would have been lost if she had not paid the loan and refinanced it.

"8. Failure to rule clearly on motion to strike evidence."

counting there was still a $544.30 balance outstanding. Also, she maintained and used the vehicle during the period of administration and caused it to be registered in her individual name. Under cross-examination by appellant's counsel, Julia admitted having used the automobile; also, she refinanced it.

However, her testimony satisfied the court that she honestly believed that by obtaining the new loan she was enabled to prevent the total loss of the vehicle to the estate and that by her act she did protect the estate to the extent of the value of the estate's equity in the vehicle. Such procedure, though without prior court approval and although irregular, did not necessitate the court's rejection of the account for the reason that it is the primary duty of the administratrix to preserve the estate. (11B Cal.Jur., p. 253.) ■ When an administrator has done an act for the purpose of saving the estate from loss without first having procured an order of court to do so, the act will be approved if the circumstances were such that a reasonably prudent man would have done likewise. (See *Estate of Armstrong*, 125 Cal. 603, 606 [58 P. 183].) ■ Where a just obligation has been paid in good faith even in the absence of a verified claim, it is not improper for the court subsequently to approve the payment of such sums. (Prob. Code, § 929.)

The payment of $802.85 by Julia to protect the estate against loss of the sedanet was no slight adventure in administering an estate of a modest inventory. She thereby rendered a valuable service to the estate which the court impliedly found to counterbalance the widow's casual use of the vehicle. The transfer of registry of the machine was not without its advantages. Julia sincerely believed that by registering the car in her name she could more readily refinance the existing mortgage. By reason of the facts that in advancing her separate funds to reduce the loan on the inventoried automobile and caring for it during administration, neither her use of it nor her transfer of its registry to ''Julia Kirkpatrick'' nor the collective vice of both acts could have fairly justified the court in surcharging the administratrix with the car's value at the date of death. Clearly, the court deemed her innocent of bad faith and of such official improprieties as would warrant the imposition of penalties. Accordingly, the credit of $802.85, the difference between the debt at death and balance now due on the sedanette, was the proper and correct sum by which she reduced the obligation of her husband's estate.

■ Appellant asserts also that the court erred in approving the administratrix' account without affirmative proof by

her of all charges and credits set forth therein. Appellant's objections as filed, however, did not question any of the debits alleged. His only attack upon the credits referred to attorney's and administratrix' fees and the credit of $802.85 she had paid on the automobile. As to such fees, the court found in accordance with appellant's objections. As to the credit on the amount due on the vehicle, ample testimony was heard. It disclosed that at her husband's death, Julia had to borrow money from her mother to liquidate the mortgage on the automobile. Thereafter she borrowed other moneys in order to repay her mother. After that transaction she made the payments and kept the car insured.

Other matters raised by appellant were affirmative allegations or attempted surcharges upon which he had the burden of proof. They constituted new and affirmative matter in opposition to the account. (*Estate of Vance,* 141 Cal. 624, 626 [75 P. 323].) If there were further objections to the final account, it was incumbent upon appellant specifically to allege them. Failure to do so operates as a waiver of any opposition thereto. (*Estate of More,* 121 Cal. 635, 639 [54 P. 148].)

Appellant has with prolixity set forth in his briefs the proceedings to date in this matter and has attempted to emphasize many errors, omissions and discrepancies in the various documents filed by respondent in connection with official duties. Such argument is apparently made for the purpose of demonstrating bad faith and improper conduct. It is true that the record herein reveals a degree of carelessness and perhaps a failure to adhere to the precise letter of the probate law. However, respondent made such explanations of her actions as to impress the trial court with her honesty and good faith. In view of the rather limited estate left by decedent and no loss having resulted by reason of the conduct of the administratrix, it cannot be said that appellant was prejudiced by the court's approval of the final account. Such technical errors as allegedly occurred are not uncommon where personal representatives have an interest in the estate. In such event the court's primary duty is to avoid loss to the estate rather than to punish or embarrass the administrator. Many of the criticisms urged by appellant under the doctrine of *de minimis* relate to nonessentials and do not warrant intervention by the reviewing court.

Order affirmed.

McComb, J., and Fox, J., concurred.