This is an appeal from an order approving the executor's accounts and from the decree of distribution in the estate of Aimee P. McKenzie, deceased.
Aimee P. McKenzie died on December 19, 1955, and after her will was admitted to probate her husband, Earl L. McKenzie, was appointed executor of her estate. The McKenzies were cattle ranchers. After Aimee died Mr. McKenzie obtained an order from the superior court to continue the ranching operations in which he and his wife had been engaged. The business continued to be conducted in the same manner in which it had been conducted prior to Aimee's death. The ranching operations were extensive. The herd numbered about 1,800 head. One lease covered 20,000 acres of land of which approximately 2,000 acres were used for raising crops. Besides the ranching operations Aimee's estate consisted of certain real property, exclusive of real property held in joint tenancy, and an inheritance due Aimee referred to as the "Cone Inheritance." Most of the property, except the Cone Inheritance and one parcel of real property, was community property. The total value of the property subject to probate in Aimee's estate was appraised at $363,604.58. The community property subject to probate was $222,058.37. (The total value of the community property was $444,116.74.)
Mr. McKenzie continued the ranching operations until the sale of the last of the herd some 15 months after Aimee's death. The operations were conducted at a loss. Mr. McKenzie's method of bookkeeping was rather unique. About one month after Aimee's death a bank account under the title, "E.L. McKenzie, trustee," was opened. This account was used exclusively as a depository for all funds received in the course of the operation of the livestock and farming operations, as well as all other funds of a community nature. All debts of a community nature were paid. As funds accumulated in this account in excess of requirements, disbursements were made equally to E.L. McKenzie, individually, and to E.L. McKenzie, as executor. These latter funds were deposited in the executor's account. When the Cone Inheritance was received a third account was opened entitled, "Aimee P. McKenzie Cone Inheritance."
In his reports to the court McKenzie only accounted for one-half of the community property. He did not account for the one-half of the community property not subject to administration in the estate of Aimee P. McKenzie. For example, only one-half of the receipts from the farming and livestock *Page 396 
operations were reported because they were joint operations in which E.L. McKenzie and the estate had an equal interest. Only one-half of the expeditures were shown. This resulted in an artificial accounting. If, for example, one hundred dollars were paid for supplies, only fifty dollars were reported to the court. The voucher in support of the expenditure would be, however, in the sum of one hundred dollars. The same would be true of receipts.
The order from which this appeal is taken settled two accounts filed by the executor. The first account was filed on July 3, 1957, and covered the period from the date of appointment of the executor to July 1, 1957; and the second account filed on December 26, 1957, covered the period from July 1, 1957, to December 26, 1957.
Objections to the first account were filed and a lengthy hearing was had on said objections, the reporter's transcript of said hearing containing 212 pages. Following said hearing the court made a minute order overruling the objections to said account, but no formal order was filed allowing the first account.
Objections were also filed to the second and final account and lengthy hearings were held on said objections, the reporter's transcript of said hearings containing 184 pages.
Thereafter, on March 19, 1959, the court made its decision overruling the objections to the account, the second account was approved and a distribution ordered. Counsel for the executor was ordered to prepare the findings and the decree. A few days later Earl L. McKenzie died. His daughter was appointed executrix of his estate. Tildene V. Naccari was appointed administratrix of Aimee's estate. In May 1959 the decree was signed as of March 25, 1959. The decree settled, approved and allowed both of the accounts filed by Earl L. McKenzie as executor. This appeal by Tildene V. Naccari, as administratrix of the estate of Aimee McKenzie, and individually, Constance E. Metzger and Shirley N. Jones followed.
Appellants' first contention is that the order approving the accounts must be reversed because of the failure to file or introduce proper vouchers. No vouchers were filed when the first account was filed, but instead cancelled checks were filed which, in most instances, were for twice the amount of the items in the account. Payments made on loans due the Crocker-Anglo National Bank were made by endorsing over to the bank checks received for the sale of cattle. Later additional vouchers were filed in support of many of the items. *Page 397 
Section 925 of the Probate Code provides that except as hereinafter provided, vouchers must be filed for all payments made by the administrator. Respondent does not contend that a voucher exists to support every payment but does contend that every item of disbursement in excess of $20 is supported by a voucher or a check. In the case of payroll items, in the main, only checks were presented.
As hereinbefore stated, extensive hearings were held upon the objections to both accounts. At said hearings the executor testified, as did the bookkeeper who kept the books relating to the business and made all of the entries. Both the executor and the bookkeeper were subjected to vigorous and thorough cross-examination by the able counsel for appellants and many questions were asked by the court. There was no evidence or even intimation that the executor had failed to account for any moneys received or that any of the expenditures reported were not in fact made. [1] Despite the numerous objections made by appellants the trial court, after a full hearing, was satisfied that the accounts were true and correct and were supported by proper and sufficient vouchers. The exhibits, consisting of several hundred checks, bills and receipts, have been filed with this court. We believe that the question of the sufficiency of the vouchers was one of fact for the trial court to determine and that there is abundant evidence in the record to support the finding of the trial court.
We believe that one of the difficulties in the instant case results from the fact that a business was being operated in which the estate only had a half interest. It is clear that since Earl L. McKenzie was the surviving husband he had the right to manage the business. Section 202 of the Probate Code provides that the husband, pending administration of his wife's estate, has the same power to sell, manage and deal with the community property as he had during his wife's lifetime. (See Wilson v. SuperiorCourt, 101 Cal.App.2d 592 [225 P.2d 1002].) This being so, the question is the type of accounting which should have been made. In Estate of Reinhertz, 82 Cal.App.2d 156, 163 [185 P.2d 858, 186 P.2d 755], the court said as dicta:
". . . In the operation of a business the executor is bound to, and should, only account to the estate for net income or profits. [Citations.] The rule of these cases is thus stated in 11b California Jurisprudence 545:
"`The detailed statement of business operations continued *Page 398 
by the representative should not be set out in his account with the item of gain or loss reported as a credit or charge; if reported at all they should be in a separate paper, perhaps as an exhibit attached to the account. In such an account of business operations the estate is not interested, being concerned only with profits made.'"
In 21 California Jurisprudence 2d, Executors and Administrators, section 700, it is said "where the operation of the business results in a loss, it would seem to be a matter of concern to the court, with respect to allowance to the representative for a claimed loss, that there appear in the account, or attached thereto and incorporated by reference therein, a statement as to the conduct of the business."
[2] It is doubtful if the requirement for the production of vouchers was meant to apply to the operation of a business. It could entail the filing of thousands of documents. If the estate is only interested in the profit or loss, then the details are not a part of the estate accounting. This would not mean, however, that the person operating the business could not be compelled to support and verify the results of the operation of the business.
Appellants also contend that the accounts were incomplete, inaccurate and did not meet the requirements of the Probate Code.[3] "It is not the purpose of the law regulating the administering of estates to require, in the statement of matters contained in an account, as much nicety or precision or as great detail as is required in pleadings in civil actions. The settlement of the account is to be considered as an adjudication of the validity of all claims exhibited therein with sufficient certainty to identify them with accuracy, . . ." (Estate ofMcDougald, 146 Cal. 191, 195-196 [79 P. 878].) [4] The court has broad discretion in passing on the accounts of administrators. (Estate of Toler, 174 Cal.App.2d 764
[345 P.2d 152]; Estate of Dow, 91 Cal.App.2d 420 [205 P.2d 698].) [5]
An appellate court will not set aside an order approving an account in the absence of a showing of bad faith on the part of the executor or an abuse of the trial court's discretion. In this matter numerous hearings were held before Judge Wetter, and it was only after he was satisfied that the final account was approved and settled. The form used by the executor is that shown in the book, Practical Aspects of Probating Estates. (Cont. Ed. Bar.)
Appellants next contend that the order must be reversed because the allowance of fees for extraordinary services is *Page 399 
not supported by the evidence. Both McKenzie and his attorneys were awarded the sum of $3,500 as extraordinary fees.
[6] The allowance of extraordinary fees to an executor and his attorneys is a matter within the sound discretion of the probate court, and its ruling will not be disturbed on appeal except for an abuse. (Estate of Behr, 149 Cal.App.2d 84
[307 P.2d 937]; Estate of Anderson, 166 Cal.App.2d 39
[332 P.2d 785].) [7] Testimony was adduced that Mr. McKenzie arranged the cancellation of an existing lease for $110,000. While the lease was community property and it may have been to the advantage of Mr. McKenzie too, it did benefit the estate; and we believe this to be an item for which extraordinary fees could be allowed. Mr. McKenzie also arranged the sale of a parcel of community real property. He had numerous consultations with his attorneys. A federal estate tax return was filed. These are all matters which the trial court could take into consideration. The award of extraordinary fees to the attorneys for the executor is also supported. The attorneys for the executor spent considerable time in defending the executor's accounts. (Estate of Raphael,128 Cal.App.2d 92 [274 P.2d 880].) Considering the value of the estate and the various services performed by both the executor and his attorneys, as shown by the record, we cannot say that the allowance of $3,500 to the executor and the same amount to his attorneys for extraordinary services was an abuse of the court's discretion.
[8] Appellants also contend that the executor should have been charged with interest on certain legacies. This contention cannot be sustained. One legacy disposed of an inheritance due Aimee from the Cone estate. This was determined to be a specific legacy. (See Estate of McLaughlin, 97 Cal.App. 485
[275 P. 875].) While the point was not raised before the probate court, the point is properly before this court. (Estate of Hubbell,216 Cal. 574, 578 [15 P.2d 503].) The Cone Inheritance was a specific legacy. (See Estate of Babb, 200 Cal. 252, 257 [252 P. 1039]; Prob. Code, § 161) Section 162 of the Probate Code begins: "General pecuniary legacies, if not paid prior to the first anniversary of the testator's death, bear interest thereafter at the rate of 4 percent per annum." The matter of interest on legacies is controlled by statute in the absence of provisions in the will. (In re Estate of Ballou, 181 Cal. 61
[183 P. 440].) Prior to 1953 apparently all legacies bore interest. [9] Since 1953 only general pecuniary legacies, certain annuities, trusts and maintenance *Page 400 
legacies receive interest. (See Prob. Code, § 162) While specific legacies are entitled to all accretions by way of dividends or interest that may accrue after the testator's death (Estate of Bixby, 140 Cal.App.2d 326 [295 P.2d 68]), the statute does not say that specific legacies bear interest.
[10] Appellants also contend that the executor should have valued the estate a year after the death of Aimee rather than at the date of death as permitted by the federal estate tax laws. There is no merit in this contention. This objection was not raised in the probate court and appellants are not entitled to raise it here, as points not raised in the court below will ordinarily not be considered on appeal. (Estate of Kirkpatrick,109 Cal.App.2d 709 [241 P.2d 555].) Earl L. McKenzie testified he did not value the estate one year after Aimee's death because he did not think he could justifiably do so and because then he would have had to include the natural increase of the herd.
No other points raised require discussion.
In summary, we are convinced that the order approving and allowing the accounts of the executor is fully supported by the record; that there was no abuse of discretion on the part of the trial court; and that the order and decree should be affirmed.
The order and decree are affirmed.
Peek, P.J., and Pierce, J., concurred.
Appellants' petition for a hearing by the Supreme Court was denied March 21, 1962. *Page 401