[Civ. No. 10006. Fourth Dist., Div. Two. Oct. 9, 1970.]

Estate of G. F. COOPER, Deceased. SECURITY PACIFIC NATIONAL BANK, as Executor, etc., Petitioner and Respondent, v.
DALE COOPER, Objector and Appellant;
ERNEST O. BENNER et al., Claimants and Respondents.

COUNSEL

Kadison, Pfaelzer, Woodard & Quinn, Thomas J. McDermott, Jr., and Irving H. Greines for Objector and Appellant.

Swarner, Fitzgerald & Dougherty and Lewis F. Jacobsen for Petitioner and Respondent.

Wilford N. Sklar for Claimants and Respondents.

**OPINION**

**TAMURA, J.**—Dale Cooper, an adult son and one of the heirs under the will of G. F. Cooper, deceased, appeals from a judgment approving the executor's first and final account and directing final distribution of the decedent's estate.

The estate was virtually all community property of decedent and his surviving wife, Clara. Under the will decedent left the residue of his estate in trust naming Security First National Bank (now Security Pacific National Bank), his wife, and appellant as trustees with directions that the assets be divided into and administered as three separate trusts designated "A," "B," and "C." Clara was named the income beneficiary during her lifetime of trusts "A" and "C" with the proviso that in the event of her death the assets of trust "A" be distributed to and administered as part of trust "B." Appellant was designated as the lifetime beneficiary of trust "B." Upon reaching age 50, he was entitled to receive the remainder and in the event he died before reaching age 50, decedent's grandson was to receive the income for life and the remainder upon attaining age 50. Clara was given an *inter vivos* general power of appointment with respect to the remainder of trust "C." In the event she failed to exercise the power, upon her death the balance of trust "C" was to be added to and administered as part of trust "B." Security First National Bank (Bank) and Clara were named as co-executors with the proviso that in the event of Clara's inability to serve, the Bank was to be the sole executor.

Prior to her death Clara executed and filed with the Bank a document exercising the power of appointment. It directed that upon her death the balance of trust "C" assets be used to provide an income of $750 per month for the benefit of Ernest Benner (Clara's brother) during his lifetime and thereafter $750 per month for the benefit of John Benner (Ernest Benner's son) during his lifetime. The Benners and the Bank are respondents herein. Clara died some four and one-half months after exercising power of appointment.

Appellant filed written exceptions to the final account and petition for distribution. In paragraph "1" of the exceptions, he alleged that Clara was incompetent and acting under undue influence when she exercised the

power of appointment and that it was, hence, invalid. In paragraph "2" he alleged that the final account was improperly computed in that "(a)," a purported loss on transfer of certain assets from trust "B" to trust "C" was improperly charged to trust "B"; "(b)," trust "B" was improperly charged for the payment of state and federal death taxes without apportionment to trust "C"; "(c)," one-half of certain stocks, should be a part of trust "B" by reason of the merger of trusts "A" and "B" on Clara's death, and the other one-half to become part of trust "C"; and "(d)" if the transfer of assets from trust "B" to trust "C" is approved, it should be based on the inventory value of the assets and not value at the date of transfer.

In a joint pretrial statement executed by counsel for each party, appellant expressly withdrew those exceptions set forth in paragraph "2" including subparagraphs "(a)," "(b)," "(c)," and "(d)" thereof. It was stipulated that the only issues of fact and contentions to be litigated were Clara's competency to exercise the power of appointment and whether she was acting under undue influence.

The pretrial order incorporated the joint pretrial statement and recited that, in addition to matters agreed upon in the joint pretrial statement, the parties stipulated that the language of the document by which Clara exercised the power was legally sufficient to accomplish the purposes and intentions therein expressed.

The trial of the matter was to the court sitting without a jury. During trial, appellant abandoned the allegation of undue influence leaving as a sole issue to be determined the question of Clara's competency. At the close of appellant's case respondents moved for a judgment pursuant to section 631.8 of the Code of Civil Procedure. The court orally granted the motion stating that its finding would be that Clara was competent at the time she exercised the power of appointment. The judge announced on the record in detail its intended decision in conformity with section 632 of the Code of Civil Procedure. Written findings and conclusions not being requested, judgment was entered in conformity with the decision as orally expressed. Appellant's motion for a new trial was denied and he now appeals from the judgment. Appellant has substituted attorneys to prosecute this appeal.

On the only issue that was tried (Clara's competency to exercise the power of appointment) appellant concedes that there was substantial evidence to support the trial court's determination. But he seeks a reversal of the judgment on the following grounds: (1) Participation in the trial by the attorneys for the executor prevented appellant from obtaining a fair trial; (2) the failure to circulate a proposed judgment as required by rules of court deprived him of a substantial right. In addition, appellant seeks

to raise certain objections initially raised in the written exceptions filed in the court below, but which he thereafter expressly withdrew in the joint pretrial statement, namely, (1) death taxes and state and federal fiduciary incomes taxes were improperly charged to trust "B" with no apportionment to trust "C," and (2) transfer of certain assets from trust "B" to trust "C" to provide trust "B" with cash to pay the taxes was improper. Also for the first time on appeal appellant urges that the exercise of the power of appointment failed because all of the trustees did not unite in accepting the document exercising the power.

## I

■ Appellant's contention that he was denied a fair trial because the executor's attorneys participated in it is devoid of merit.

It is urged that an executor, being a representative of all of the legatees, should maintain a neutral position between persons claiming to be entitled to the distribution of an estate (*Estate of Friedman,* 176 Cal. 226, 228-229 [168 P. 21]; *Estate of Lynn,* 109 Cal.App.2d 468, 473-474 [240 P.2d 1001]) and that in the instant case the position of neutrality was violated. Appellant complains that the attorney for the executor filed a trial memorandum, interposed objections to questions propounded by appellant's trial counsel, and joined the Benners in the motion for judgment pursuant to section 631.8 of the Code of Civil Procedure.

None of the acts complained of deprived appellant of a fair trial. The trial memorandum was filed in compliance with the pretrial order which directed all parties to file such a memorandum. The executor filed a separate memorandum in which it suggested the procedure to be followed at the hearing, to which there was no objection, and supplied a digest of pertinent cases on the issue of competency; it contained no argument, made no reference to anticipated evidence, and did not advocate a particular result. While the attorney for the executor on occasions interposed objections to questions propounded by appellant's trial counsel and joined the Benners in the motion for judgment, our examination of the record fails to reveal any prejudice resulting to appellant from those actions. The record reflects that appellant was afforded wide latitude in the presentation of his case and that the trial judge dispassionately, carefully and ably reviewed the evidence and the applicable law in reaching his decision. It is significant that appellant not only concedes that there was substantial evidence to support the trial judge's determination but makes no claim that evidentiary or other rulings of the trial judge were erroneous.

There is no support in the record for the appellant's assertion that the executor or the attorneys for the executor violated a fiduciary duty to ap-

pellant. Appellant's reliance upon *Hammett* v. *McIntyre,* 114 Cal.App.2d 148 [249 P.2d 885], is misplaced. In that case a law firm defending a personal injury action on behalf of an insurance company represented two defendants with conflicting interests. In the present case appellant was at all times vigorously represented by independent counsel.

## II

■ There is no merit to the contention that the judgment should be reversed because a proposed judgment was not circulated as required by rule 232, subdivision (h) of the Rules of Court before it was signed and filed.

Trial in the instant case concluded on January 8, 1969, and judgment was signed and entered on January 21, 1969.

Amendments to rule 232 of the Rules of Court became effective on January 1, 1969. Among the amendments was subdivision (h) which provides: "If findings are not requested and a written judgment is required, the court shall prepare and mail a proposed judgment to all parties who appeared at the trial within 10 days after expiration of the time for requesting findings. If findings have been waived and a written judgment is required, the court shall prepare and mail a proposed judgment to all parties who appeared at the trial within 10 days after oral announcement of intended decision in open court or, if mailing of the announcement of intended decision is required, within 10 days after such mailing. The court, in its discretion, may notify counsel for the prevailing party to prepare, serve and submit such proposed judgment to the court within 10 days after such notice. Any party affected by the judgment may, within 10 days after service of the proposed judgment on him, serve and file objections thereto.

"The court shall, within 10 days after expiration of the time for filing objections to the proposed judgment or, if a hearing is held, within 10 days after such hearing, sign and file its judgment. The judgment so filed shall constitute the decision upon which judgment shall be entered pursuant to Section 664 of the Code of Civil Procedure."

A proposed judgment was not circulated as required by subdivision (h). Appellant contends that the failure to do so precluded him from filing objections to the judgment and raising in the trial court the issues now sought to be raised on appeal thereby depriving him of a substantial right.

■ While a Rule of Court phrased in mandatory language is generally as binding on the courts and parties as a procedural statute, it is seldom jurisdictional and ordinarily departure from it is not reversible error unless prejudice is shown. (See *Adams* v. *Sharp,* 61 Cal.2d 775, 777-778

[40 Cal.Rptr. 255, 394 P.2d 943]; cf. *Harriman* v. *Tetik,* 56 Cal.2d 805, 810 [17 Cal.Rptr. 134, 366 P.2d 486]. (Provisions of former section 634 of the Code of Civil Procedure relating to findings held directory and failure to comply strictly with its provisions not reversible error.) 1 Witkin, Cal. Procedure (1954) § 68.) In the instant case appellant has not shown prejudice. We are not persuaded by appellant's argument that the opportunity to object to a proposed judgment precluded him from raising in the trial court the issues which he now seeks to raise on appeal. By withdrawing all objections to the settlement of the account other than the one issue which was tried, any objection to a proposed judgment on the ground that the court failed to consider the remaining exceptions would have been unmeritorious. (See *Estate of Fraysher,* 47 Cal.2d 131, 139 [301 P.2d 848]; *Estate of Boyes,* 151 Cal. 143, 147-148 [90 P. 454].) In this connection it is noted that although appellant made a motion for new trial on several grounds, none were on the ground the court failed to pass upon the withdrawn objections. Failure to comply with rule 232, subdivision (h), resulted in neither prejudice nor injustice to appellant and did not constitute reversible error.

## III

We turn to appellant's attempt to resurrect the objections which he initially raised but subsequently withdrew in the joint pretrial statement.

 Under rules governing the scope of appellate review generally, appellant would clearly be foreclosed from raising those objections. Both under Rules of Court and judicial decisions, the pretrial conference order supersedes the pleadings and controls the subsequent course of the case unless it is modified at or before trial. (Rule 216, Rules of Court; *City of Los Angeles* v. *County of Mono,* 51 Cal.2d 843, 847 [337 P.2d 465]; *Agricultural Ins. Co.* v. *Smith,* 262 Cal.App.2d 772, 777 [69 Cal.Rptr. 50]; *Dell'Orto* v. *Dell'Orto,* 166 Cal.App.2d 825, 829-831 [334 P.2d 97]; *Baird* v. *Hodson,* 161 Cal.App.2d 687, 691 [327 P.2d 215].) The principal purpose of pretrial is to determine what the lawsuit is about, to simplify and define the issues, and to give notice of matters not necessarily revealed by the pleadings where such matters are issues in the case. (*Universal Underwriters Ins. Co.* v. *Superior Court,* 250 Cal.App. 2d 722, 728 [58 Cal.Rptr. 870]; *Pulse* v. *Hill,* 217 Cal.App.2d 301, 304 [31 Cal.Rptr. 765].) The pretrial order determines the issues to be tried; issues that are not designated as being in dispute are no longer issues in the case. (*Universal Underwriters Ins. Co.* v. *Superior Court, supra,* at p. 727; *Feykert* v. *Hardy,* 213 Cal.App.2d 67, 74 [28 Cal.Rptr. 510].) Until a request for modification is made, the trial judge and the parties have a right to rely upon the posture of the case as defined by the pretrial order.

(*Feykert* v. *Hardy, supra.*) Moreover, under settled principles of appellate review, questions not raised in the court below may not be raised for the first time on appeal. Those principles are applicable to appeals in probate proceedings. (*Estate of Westerman,* 68 Cal.2d 267, 279 [66 Cal. Rptr. 29, 437 P.2d 517]; *Estate of D'Avila,* 217 Cal.App.2d 123, 126-127 [31 Cal.Rptr. 363]; *Estate of McKenzie,* 199 Cal.App.2d 393, 400 [18 Cal.Rptr. 680]; *Estate of Kirkpatrick,* 109 Cal.App.2d 709, 713 [241 P. 2d 555].)

■ Appellant urges that the foregoing principles should not be controlling in an appeal from an order settling an executor's account or a decree of distribution because it is the duty of a probate judge to make independent inquiry into any matter which may appear objectionable even though no objections have been filed. While such a duty has been held to exist (*Estate of More,* 121 Cal. 635 [54 P. 148]; *Estate of Sanderson,* 74 Cal. 199, 208 [15 P. 753]), where written exceptions have been filed, in the absence of an independent inquiry by the court, the issues for settlement are limited to the exceptions specified (*Estate of Fraysher, supra,* 47 Cal.2d 131, 139; *Estate of Boyes, supra,* 151 Cal. 143, 148) and an exception not raised in the court below ordinarily may not be raised for the first time on appeal. (*Estate of Fraysher, supra,* p. 139; *Estate of Rohrer,* 160 Cal. 574, 577 [117 P. 672]; *Estate of McKenzie, supra,* 199 Cal.App.2d 393, 400; *Estate of Kirkpatrick, supra,* 109 Cal.App.2d 709, 713.)

In certain situations reviewing courts have permitted a limited departure from those principles by entertaining an objection to an account which was not raised in the court below. In *Estate of Barnhart,* 272 Cal.App.2d 768 [77 Cal.Rptr. 753], an heir appealing from an order settling an executor's final account sought to challenge, among other matters, the manner in which the costs of administration had been prorated. The court held that the objection might be considered even though it was not specifically included as one of the written exceptions filed in the trial court. The court noted that the trial judge's memorandum decision indicated the issue had been orally raised. In addition, the court alluded to the duty of a probate judge to see that statutory provisions with reference to the allocations of cost be carried out and held that any oversight by the probate judge in that respect ought to be correctible on appeal. In *Estate of Meyer,* 241 Cal.App.2d 747 [51 Cal.Rptr. 72], a beneficiary who neither appeared nor filed any objection to the account was held to have standing to appeal and to raise an issue presenting a pure question of law. In neither case was the objection which was sought to be raised on appeal one which had been previously made but expressly withdrawn from the trial court's con-

sideration. Manifestly the present case does not fall within the limited exceptions recognized in *Barnhart* and *Meyer.*

In his closing brief, appellant for the first time contends he should not be bound by the stipulation in the joint pretrial statement because it constituted an unauthorized abandonment of substantial rights by his trial counsel.

The power of an attorney engaged to prosecute or defend an action to enter into stipulations was recently extensively reviewed in *Linsk* v. *Linsk,* 70 Cal.2d 272 [74 Cal.Rptr. 544, 449 P.2d 760]. Following its analysis of numerous cases, the Supreme Court summarized its conclusion as follows: "The dichotomy in the foregoing cases appears to relate to whether the attorney has relinquished a substantial right of his client in entering into a stipulation on his behalf. If counsel merely employs his best discretion in protecting the client's rights and achieving the client's fundamental goals, his authority to proceed in any appropriate manner has been unquestioned. On the other hand, if counsel abdicates a substantial right of the client contrary to express instructions, he exceeds his authority." (*Linsk* v. *Linsk, supra,* at p. 278.)

There is nothing in the record in the instant case suggesting that the stipulation was entered into contrary to appellant's express instructions or without his knowledge or approval. There is a rebuttable presumption that such a stipulation was authorized by the client. (*Gagnon Co., Inc.* v. *Nevada Desert Inn, Inc.,* 45 Cal.2d 448, 460 [289 P.2d 466].) The presumption is manifestly justified in the present case. The stipulation was not one which was hastily entered into during the heat of trial; it was a part of a considered and deliberate agreement, signed by counsel for all interested parties, defining and limiting the issues to be tried. It is significant that appellant has never sought to be relieved from the stipulation on the ground that it was entered into over his objection or without his knowledge or approval.

While in his initial statement of exceptions, appellant included numerous accounting objections, his fundamental goal was to secure the invalidation of the exercise of the power of appointment in which event appellant would have succeeded to the remainder of the assets of trust "C." Withdrawal of the exceptions which appellant now seeks to reassert did not impair this objective nor result in the surrender of substantial rights.

The objection that death taxes were improperly charged to trust "B" instead of being allocated between trusts "B" and "C" was unmeritorious. The record shows that practically the entire estate consisted of

community property of the deceased and his surviving spouse and that the value of the assets allocated to trust "C" for the benefit of the surviving wife did not exceed 50 percent of the value of the estate. Appellant concedes that even though the wife elected to take under the will only one-half of the community property was required to be included in the gross taxable estate and that the wife's community interest remained nontaxable. Under principles enunciated in *Estate of Buckhantz,* 120 Cal. App.2d 92 [260 P.2d 794], the testator not having directed the contrary, the surviving spouse was entitled to have the nontaxable half of the community interest allocated to the trust which was directed to be established for her benefit. (See *Estate of Talbot,* 257 Cal.App.2d 687, 695-696 [65 Cal.Rptr. 517].) As the court aptly observed in *Buckhantz,* at pp. 101-102, it would be a "strange legal paradox" in such circumstances to require the widow to pay a tax on her nontaxable community interest merely because she elected to receive the property under the will rather than under the statute. The fact that in the present case the will contained a provision with respect to payment of death taxes does not compel a different result. In the case under review the will directed death taxes to be paid out of "my gross taxable estate" and not charged against or collected from any beneficiary. The widow being entitled under *Buckhantz, supra,* to be free of the tax burden to the extent the amount received for her benefit did not exceed the nontaxable half of the community property, the payment of taxes from trust "B" to which the residue of the gross taxable estate was allocated was consistent with the testator's directions. The executor did not apportion the charges among the beneficiaries of trust "B" and any other beneficiaries or joint tenants. Nor does the fact that *Buckhantz* also involved application of the proration statutes furnish a valid basis for distinguishing it. The proration statutes (Prob. Code, § § 970-977) affected only so much of the value of the assets given to the wife as exceeded 50 percent of the nontaxable community interest. *Estate of McAuliffe,* 132 Cal.App.2d 476 [282 P.2d 541], and *Estate of Wilson,* 154 Cal.App. 2d 24 [315 P.2d 451], cited by appellant are inapposite. Neither case involved nontaxable community interests and the rights of a surviving spouse who elects to take under a will.

■ With respect to the fiduciary's income taxes, there is nothing in the record to indicate that those charged to trust "B" did not relate solely to income from assets held in that trust. In the absence of such proof, it cannot be said that they were improperly charged against trust "B." By withdrawing the exception in the court below, appellant precluded the parties from introducing any evidence on that issue. This is an added reason appellant should be estopped from raising the issue on appeal.

■ The remaining objection which appellant seeks to resurrect on

appeal after expressly withdrawing it by stipulation in the joint pretrial statement concerns the transfer of certain stock in trust "B" to trust "C" in order to provide trust "B" with funds with which to pay the death taxes charged against it. Apparently the transfer was made on the basis of the market value of the stock on the date of transfer and reflected a "loss" from the appraised inventory value. Appellant's opposition to the transfer appears to be two-fold: (1) that the taxes were improperly charged to trust "B," and (2) the transfer was in violation of paragraph Eighth A (2) of the will which directed that the trustees not "sell" or "liquidate" the stock in question.

The first contention has already been considered; the second is equally devoid of merit. Paragraph Eighth A (2) of the will provided in relevant part: ". . . Provided, however, that the trustees may not sell any mentioned stock of American Telephone & Telegraph or Security First National Bank, excepting and to the extent liquidation of principal of the trust estate by the trustees may be necessary from time to time to provide principal cash funds to make principal distributions to or for the benefit of my said wife or to pay administration expenses of the trust which may be payable out of principal. . ." It cannot be said, as a matter of law, that the transfer constituted a "sale" or "liquidation" contrary to the testator's direction. Article Eighth relates to the powers of the trustees during administration of the trusts after distribution from the probate estate; it is not a limitation on the power of the executor during probate administration before distribution to the trust. Moreover, a reasonable interpretation of the restriction is that it proscribed sales from the trusts and not transfers within them.

In this connection it is noted that appellant urges that under the rule enunciated in *Parsons* v. *Bristol Dev. Co.,* 62 Cal.2d 861 [44 Cal. Rptr. 767, 402 P.2d 839], in the absence of extrinsic evidence the interpretation of a written document presents a question of law upon which a reviewing court must exercise its independent judgment and that therefore issues pertaining to the interpretation of the will in the instant case may be raised for the first time on appeal. The flaw in the argument is that the reason there is no extrinsic evidence is because the issue was withdrawn by appellant in the court below. Had the issue been raised, parol evidence would have been admissible, not only to resolve patent ambiguities, but to determine initially whether the language of the will was ambiguous. (*Estate of Russell,* 69 Cal.2d 200, 210-212 [70 Cal.Rptr. 561, 444 P.2d 353].) Thus, merely because an issue may turn on an interpretation of the will does not entitle appellant to raise the issue for the first time on appeal.

## IV

■ For the first time on appeal appellant urges that the exercise of the power of appointment was invalid as a matter of law because all of the trustees did not join in accepting the document by which the power was exercised. The contention is specious.

Article Eighth, E, (6) of the will provided in relevant part that on the death of Clara the trustee should deliver the balance of assets of trust "C" to such person as she ". . . may designate and appoint in the last unrevoked written instrument other than a Will executed by her and *on file with the corporate trustee at the time of her death.* This general power of appointment granted to my said wife . . . may be so exercised by her from time to time and any exercise of such power subsequently may be revoked or modified by a written instrument other than a Will executed by her and *filed with said trustees,* as hereinabove provided." (Italics added.) Clara executed a document exercising the power and filed it with the corporate trustee. She fully complied with the express terms of the will.

Appellant nevertheless urges that the underscored portion of the last sentence of the quoted paragraph shows that the testator intended the exercise of the power to be filed with all of the trustees. The last sentence, however, relates to revocations or modifications of the power. Moreover, as respondents urge, the entire paragraph is susceptible to the reasonable interpretation that the testator intended a modification or revocation, as well as the initial exercise of the power, to be filed only with the corporate trustee. Appellant suggests that the testator intended the power to be filed with all trustees, including appellant, in order to provide appellant with the opportunity to "negotiate" with Clara. There is no reasonable basis for such construction. Appellant was already independently provided for under the will. In giving the widow the power of appointment without any restrictions or reservations whatsoever, it is reasonable to assume that the testator wanted his wife to be free from any outside influences, including appellant, and therefore provided for the filing of the document with the corporate trustee.

## V

■ Appellant's contention that section 2268 of the Civil Code required the document exercising the power to be "accepted" by all trustees is without substance. Section 2268 provides: "Where there are several co-trustees, all must unite in any act to bind the trust property, unless the declaration of trust otherwise provides." The section pertains to acts of trustees in the administration of trust properties. The exercise of the power

of appointment by Clara did not require any act of the trustees; the trustees were not required to approve or consent to the exercise of the power. All that was required was that the document be "on file" with the corporate trustee at the time of Clara's death.

Judgment affirmed.

Gardner, P. J., and Kerrigan, J., concurred.

A petition for a rehearing was denied October 28, 1970, and the petition of the objector and appellant for a hearing by the Supreme Court was denied December 3, 1970.