Filed 8/22/25  Conservatorship of the Person and Estate of Martha A. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| Conservatorship of the Person and Estate of Martha A. | |
| RICHARD HUNTINGTON, as Conservator, etc., | G063437 |
| Plaintiff and Appellant; | (Super. Ct. No. 30-2019-01066588) |
| v. | |
| JODEE S. et al., | O P I N I O N |
| Objectors and Respondents. | |

Appeal from an order of the Superior Court of Orange County, Ebrahim Baytieh, Judge. Reversed in part and remanded.

Law Offices of Eric F. Becker, Eric F. Becker and Samantha J. Jones for Plaintiff and Appellant.

Jodee S., in pro. per., for Objectors and Respondents.

\*          \*          \*

This was a complex conservatorship case, but this appeal is reasonably straightforward. Richard Huntington is a professional fiduciary. He was appointed as conservator for Martha A. (Marty),[1] the conservatee. He appeals from the court's order approving, in part, his second and final account, specifically the reduction of attorney fees from $186,990 to $94,955. Huntington contends the court inappropriately considered the argument of two of Marty's daughters, particularly that of Jodee S., as evidence.

We agree with Huntington that the court erred by allowing Jodee's statements at all and in considering her statements when issuing its ruling. Despite numerous warnings to Jodee to submit any objections in writing, she explicitly refused to do so. Huntington expected that based on the lack of written submissions, she would not be allowed to argue. Sua sponte and without prior notice, the court allowed her to argue anyway. In its ruling, the court stated it considered these "oral objections" in reaching its findings. In doing so, the court erred. By failing to follow its own prior orders, the court abused its discretion by failing to give Huntington sufficient notice that Jodee would be arguing. Accordingly, we reverse the order in part and remand for further proceedings.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

A. *Background*

This case has an extensive history. In the interests of brevity, we omit many facts that are not directly relevant to the limited issues on appeal.

---

[1] We use first names to refer to the conservatee and her family members.

Marty was born in 1941 and passed away on June 30, 2022. This case began in April 2019, when Marty's son, Richard A., filed a petition to appoint a conservator for Marty's estate and person. On May 6, Huntington was appointed as temporary conservator of the estate, over Marty's objection. On May 14, Richard filed an amended petition asking the court to appoint Huntington as both conservator of Marty's person and estate.

Initially, the Law Offices of Eric Becker (Becker) represented both Richard and Huntington. Becker later substituted out as Richard's attorney, but continued to represent Huntington at all times relevant.

One of Marty's daughters, Judy E., filed a competing petition for appointment as conservator of Marty's person on June 18, and objected to her brother Richard's petition. The court appointed the public defender to represent Marty. On July 3, Judy filed an amended petition nominating herself as conservator of both Marty's person and estate and objected to Huntington's appointment.

Judy and Richard objected to each other's petitions. Marty filed a written objection to Richard's petition, and "adamantly objected," according to the trial court, to the appointment of Richard or Huntington as conservator. Marty asserted her ability to care for herself and make her own medical decisions, but also stated her preference to have Judy appointed if the court decided a conservatorship was warranted. A guardian ad litem was appointed for Marty.

In August, Huntington filed a voluntary bankruptcy petition on behalf of Marty's estate.

Around August 30, the parties reached a settlement agreement in which all interested parties agreed that Judy and Huntington would be

3

appointed as co-conservators of Marty's person, and Huntington would be appointed as the conservator of her estate. This agreement, however, did not last long. Judy filed multiple ex parte petitions to suspend Huntington, and Huntington contended that Judy entered into the settlement agreement in bad faith. The ex parte petitions were eventually denied. The public defender, on Marty's behalf, joined in Judy's petition to remove Huntington. In November, Judy filed a petition to remove Huntington from both his roles as conservator. This contentious litigation proceeded.

B. *First Accounting*

In early December 2020 and amended in February 2021, Huntington filed a first amended accounting, summarizing his first year as conservator. The court approved the accounting on December 20, 2021, over the objections of both Judy and another of Marty's daughters, Jodee S. The court set fees to Huntington at $192,360, fees to Becker at $253,190, and $1,600.43 in expenses.

As part of the litigation over the first account, Huntington resigned as conservator of the estate, which the court approved. Huntington was nonetheless required to account for the remaining time during which he was conservator, from February 1, 2021, through his resignation on December 20, 2021.

C. *Second Accounting*

Accordingly, on June 13, 2022, Huntington filed his second and final account, along with a petition for fees and other relevant orders. Huntington did not seek fees for himself, but did seek fees for Becker. Becker also filed a declaration in support of the attorney fees request.

4

Judy filed written objections to the attorney fee request through counsel. Among other things, she claimed some billed time was inappropriate because two attorneys were present unnecessarily; that Becker had billed for time spent litigating Huntington's previous fee request, which had been substantially reduced; that some billed time was excessive, and other similar objections.

The second account initially came on for hearing on November 2, 2022, along with numerous other pending matters. Eventually, these matters, including fee petitions from various parties and lawyers, would end up being tried together. At the time of the hearing, as relevant here, Judy had filed objections to Becker's declaration regarding attorney fees.

Jodee told the court she wished to make an oral objection to Becker's declaration. The court told Jodee to file written objections, stating the court was unable to move forward without them. The court stated: "With regard to what we have, we need to get objections filed. So for those of you that are objecting, you['ve] got to file your written objections, okay? So that we know what the—the nature of the objection is . . . [w]e need to formalize it so that we can, you know, figure out what we're doing. [¶] The whole point of that is to identify what's at issue so we can figure out whether we can resolve those issues of whether we have to have a hearing on it."

One of the attorneys suggested setting a deadline date for written objections, and the court agreed. The court also expressed that the case might be amenable to settlement, but "we can't get to settlement until we know what the objections are . . . so we're going to need written objections, and so I need to put [the hearing] over so that written objections can be . . . filed." The court set a hearing for February 2 as a come-back hearing and a trial setting

conference. The court also set December 15 as a deadline for filing initial objections in order to give other parties two weeks to file written responses.

The court specifically asked Jodee if she could comply with that date. Jodee indicated her preference to have the hearing immediately, but the court informed her that was not possible, because if there was a contested issue, the matter must be "set for a hearing as an evidentiary contested hearing." The court told Jodee, "If you're going to object, you have to object because it's really important that you express in your objection what your concerns are; right?" Jodee indicated she understood. "So if I give you to December 15, you file your objections on or before December 15th, . . ." and the other parties would have the opportunity to file a response.

As relevant to the instant appeal, no further objections were filed. Huntington filed a reply to Judy's extant objection. Jodee, in particular, filed no objection to Huntington's second accounting.

The next hearing took place on February 2, 2023, as scheduled, but with a new judicial officer presiding. The court noted the pending matters. Counsel for various parties stated they had met and conferred and agreed to proceed via submission on the pleadings for various matters. The court continued the matters to March 27, and directed the parties to file a joint status report to identify all remaining petitions, identify which would be decided by submission on the pleadings by oral argument, but no oral presentation of evidence, and to address whether any issues required bifurcation.

During the hearing, Jodee stated that she refused to write another objection to "Becker's fee request because all that did was churn

more fees for their benefit." When asked if she was ready to proceed, she said she had "a statement to make."

The court decided to allow parties who had failed to do so previously a final opportunity to file written objections, which the court would decide to accept or reject at the next hearing. The court's written order stated that any objections not filed by the next hearing would be deemed waived pursuant to rule 7.801 of the California Rules of Court.[2] The court continued the matters until March 27, with the joint statement due five days prior.

The parties submitted the joint status report as required. Judy's attorney signed it on her behalf, and Jodee signed it on her own behalf. In sum, the only written objection to Becker's declaration in support of the attorney fee request was Judy's. No objections were filed to Huntington's second account. The parties also agreed that as to the second account, given the lack of "objections, may be granted as prayed or supplemented after the court considers any closing oral arguments and any responses or defenses that may be presented." As to the attorney fee request, given that an objection had been filed, "the parties agree to forego a trial concerning those matters and instead agree to submit on the pleadings after closing oral arguments under time limits to be set by the court."

No further objections were filed prior to the hearing.

On March 27, all parties appeared. With regard to Huntington's second account, the court asked whether the parties requested time for oral argument. Only Jodee indicated that she did. Because Jodee had not filed an

---

[2] Subsequent rule references are to the California Rules of Court.

objection, the court asked why she should be permitted to argue on the second account. "If you believe that you are impacted by or you should be treated as a party in connection with that, I'm going to give you an opportunity to tell me why. Then I will let you know." The court ordered Jodee to file any statement in writing by April 10. The court cautioned her that if she did not file that request, "the court is going to treat that as waiver of your request to orally argue to the court regarding" Huntington's second account.

With respect to Becker's declaration, the court considered Judy's objection and Huntington's reply to it. The court stated it understood the parties had agreed "to submit on the pleadings after the closing oral argument under the time limit to be set by the court." The court again gave the parties the opportunity to clarify their intentions: "[A]m I correct in understanding that nobody is requesting to actually submit additional evidence? There's no request for witnesses to be called or document to be submitted regarding this matter other than what was previously filed?" No one present spoke up. The court then explicitly confirmed, that as to the Becker declaration, the matter was "going to be submitted based on the pleading already filed. And the only thing that's going to happen is closing oral argument." Again, nobody disagreed. The court then turned to a discussion of time estimates for closing argument. Jodee asked for 15 minutes. Ultimately, the court decided to give each party 30 minutes.

The court then continued this procedure for the remaining petitions, which we need not recount here. There were no requests for evidentiary hearings on any of the petitions. At the conclusion of reviewing each petition, the court again asked: "Is there anyone who believes that there

are any papers that are still going to be filed? Any moving paper, responding paper, objection; anything you anticipate to be filing other than what I told [Jodee] to file by April 10?"

Huntington's counsel stated: "No, your honor. And I would just like to clarify. The reason why I was asking with regard to objections was because it was our understanding there was a [briefing] schedule that was laid out [at] . . . the November 2nd hearing. [¶] And during the last hearing we were also ordered to file objections five court days before today. So my concern is being able to adequately address any allegations that are made orally and our inability to submit evidence in response to the same."

The court responded: "My definition of oral argument does not include under any circumstances the introduction of new evidence. [¶] Oral argument[s] are for the purpose of the attorneys or parties to argue their interpretation of facts or the application of the law based on the evidence already before the court. [¶] So there should be nothing for you . . . to respond to as far as new evidence or new objections because there is no more time for filing those. [¶] You will have the opportunity to orally respond to any argument being made or any factual interpretation being made. So I don't anticipate you finding yourself in a position where another side is going to be bringing up a piece of evidence that is not part of the record at this time." The court added: "I understand that arguments sometimes can be a surprise for opposing parties, so if something comes up I will entertain a request for leave of the court to file something subsequently, but I don't anticipate us getting there." At the conclusion of the hearing, the court ordered the parties to return for closing arguments in May.

By the time of the May 23 hearing, Jodee had not filed the document the court had directed her to submit by April 10 stating why she should be given a chance to argue when she had not submitted written objections. The court indicated it would hear Jodee on the second account despite her lack of compliance. The parties were also told not to object when others were speaking.

Jodee then read a statement that comprises approximately seven pages of the reporter's transcript, alleging, among other things, that the conservatorship was fraudulent, Huntington and his counsel were acting to enrich themselves, and that Marty did not have dementia. The court then asked Jodee to "take two minutes and tell me a little bit about your mom." Jodee spoke for several minutes about her mother. Judy also spoke about her mother.[3]

The court then asked counsel for any comments. Counsel, based on the court's statements that it would not accept new evidence, "decided against prolonging matters by vigorously defending themselves." ~**(AOB 18)**~

With respect to the fee declaration, Jodee was again given leave to a read a lengthy statement and to submit the statement in writing to make it part of the court's record. Judy, despite being represented by counsel, was also allowed to speak.

---

[3] Marty's third daughter, Trudy A., who also had not filed any written objections, was allowed to speak as well. Our ruling applies with equal force, and for the same reasons, to statements by Trudy. The main difference between Jodee and Trudy is that the court did not specifically state it had considered Trudy's arguments when it issued its ruling.

After the hearing, the court allowed all parties to submit a final brief. Jodee, after refusing to submit objections, finally filed a "Verified Summation." Huntington also filed a brief. The court took all matters under submission.

On September 11, 2023, after the issuance of a tentative statement of decision and a round of objections, the court issued its final statement of decision.

With respect to the second account, the court stated that it "gave weight, but not dispositive weight, to the lack of filed written objections to this accounting. The court considered and gave appropriate weight to the oral objections voiced by [Jodee] during oral arguments, as well as [Jodee's] subsequent written statements." The court further noted that Jodee's claims of corruption and fraud were hearsay and that hearsay, even if based on honest belief, was not a substitute for evidence. The court found the accounting was facially valid because it was legally compliant and adequately supported and approved the accounting, noting Huntington had not asked for any fees for himself.

With respect to the attorney fee request, the court noted Becker was seeking $186,990 for legal services rendered for Huntington starting on February 1, 2021, representing 1,177.3 hours of legal services. Becker also sought $6,720.16 in costs. The court noted that all of Marty's daughters objected to the fee petition "in writing as well as orally during closing arguments." The court found many of these objections "meritorious."

The court first determined that Probate Code section 2640, subdivision (d)(1), which states that a conservator shall not be compensated from the estate for any fees or costs incurred in unsuccessfully defending

11

their fee petition, or opposing a petition or any other unsuccessful request or action on behalf of the conservatee, applied to Becker's fee petition. The court also indicated it would "independently review all the billing records in deciding what to approve, what to disapprove, and what to reduce." The court also indicated that it did not accept any contention that legal fees purportedly benefitting Huntington, as conservator, automatically benefitted Marty. The court stated its belief it was required to determine if the legal services benefitted Marty.

The next section of the court's decision was entitled: "Personal Attacks." The court, in a lengthy discussion, stated both Becker and Marty's daughters had engaged in such attacks, quoting numerous examples of such attacks by Jodee and counsel during closing argument. In sum, the court stated it was convinced that "the contentious nature of this litigation . . . colored the vast majority of [Becker's] legal services provided during this relevant period."

With respect to Judy's objections, the court noted it had reviewed and would rule on each. Among other things, the court agreed that billing for the time of more than one attorney, when legal services could have been provided by a single attorney, was inappropriate. The court also found several of Judy's objections to billings relevant to the bankruptcy matter were meritorious.

Generally, the court found $400 an hour for the senior attorney's time and $350 an hour for an associate were reasonable, but $175 an hour for paralegal time was unreasonable. The court also found time spent among Becker attorneys and paralegals communicating with each other was not compensable. It allowed $150 an hour for paralegal work. With respect to

12

costs, the court allowed $478.21 for electronic filing fees but nothing for administrative costs such as copies, postage and parking.

The court then stated it had reviewed all time entries and allowed a total of $94,955 in legal fees and $478.21 in costs. An order was duly entered, from which Huntington now appeals.

## DISCUSSION

### I.

### STANDARD OF REVIEW

The standard of review for an award of statutory fees is abuse of discretion. (*Kasperbauer v. Fairfield* (2009) 171 Cal.App.4th 229, 234.) This is true regardless of whether the appeal is from an application for fees in the first instance, or an appeal from the denial of a motion for new trial on the issue. With respect to factual findings, there is no abuse of discretion when the factual findings are supported by substantial evidence. (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 1006.) We review any pure issues of law de novo. (*Roberts v. United Health Care Services, Inc.* (2016) 2 Cal.App.5th 132, 149.)

### II.

### THE COURT ERRED BY CONSIDERING JODEE'S OBJECTIONS

The Probate Code addresses objections such as the ones at issue here. Probate Code section 1043, subdivisions (a), (b), state: "An interested person may appear and make a response or objection in writing at or before the hearing," and then the court has discretion to "hear and determine the response or objection at the hearing, or grant a continuance for the purpose of allowing a response or objection to be made in writing." Probate Code section 2622 provides similarly for accountings. When an interested party has

13

objections to an account, the objector must "specifically . . . allege them. Failure to do so operates as a waiver of any opposition thereto." (*Estate of Kirkpatrick's* (1952) 109 Cal.App.2d 709, 713.) Rule 7.801 states: "If the court continues a matter to allow a written objection or response to be made, and the responding or objecting party fails to serve and file a timely objection or response, the court may deem the objections or responses waived."

Here, as set forth in detail above, the court established a procedure for objecting to the second account, which included the fee request. On November 2, 2022, the court told Jodee that she needed to file written objections: "[Y]ou['ve] got to file your written objections, okay? So that we know what the—the nature of the objection is . . . [w]e need to formalize it so that we can, you know, figure out what we're doing." The court repeated this sentiment again later in the hearing, setting a deadline for objections, and Jodee indicated she understood. She never filed written objections.

At the next hearing, on February 2, 2023, Jodee stated she refused to file a written objection to "Becker's fee request because all that did was churn more fees for their benefit." Despite Jodee's explicit and unmistakable refusal to submit written objections, the court gave her another chance, giving any party until five days before the next hearing to file written objections. The minute order reflects that if objections were not filed, "court will deem waived per [rule] 7.801." Again, Jodee filed nothing.

On March 27, Jodee nonetheless asked the court for time to argue against the second account. Once again, the court gave Jodee the chance to file a statement in writing as to why she should be permitted to argue by April 10. The court cautioned her that if she did not file that request, "the

14

court is going to treat that as a waiver of your request to orally argue to the court regarding" Huntington's second account.

At that same hearing, Huntington's counsel asked for clarity and expressed the concern about being able to adequately address allegations made orally without written objections. The court assured counsel: "My definition of oral argument does not include under any circumstances the introduction of new evidence."

April 10 came and went, and Jodee filed nothing. Despite the warning that the failure to do so would be deemed a waiver, the court allowed Jodee to argue at length with respect to the second account. Her "argument" was purely factual, and there were no documents or admissible evidence to support her statements. With respect to the fee declaration, she was given leave to read a lengthy statement into the record and to submit the statement in writing.

Courts set procedures and briefing schedules for a reason—so that all parties know what to expect. This ensures fairness and due process. Following its own procedures is never more important than in a complex, highly contested case. The court had already decided that Jodee waived her right to argue objections if she did not submit them in writing, once on February 2, 2023, and again on March 27.

Courts certainly have the power to reconsider or modify their own interim orders. (*Kerns v. CSE Ins. Group* (2003) 106 Cal.App.4th 368, 388.) But if the court chooses to do so, particularly on a matter of significance, as a matter of due process, notice to the parties is required. (See Cal. Const., Art. I, § 7; *In re Emily R.* (2000) 80 Cal.App.4th 1344, 1351.)

Jodee explicitly and knowingly refused to submit written objections. She also refused to submit anything in writing to justify why she should be permitted to argue when she had failed to do so. The court had warned Jodee twice that the failure to submit anything in writing would result in a waiver of the opportunity to argue. But on the day of closing argument, sua sponte and without notice to the other parties, the court allowed her to argue anyway. The court permitted Jodee to commit an end-run around on basic procedural requirements, and when the court considered Jodee's argument in rendering its decision, it abused its discretion.[4]

Parties must be able to attend hearings confident that the court will follow its own established procedures. Otherwise parties cannot be adequately prepared, and due process is compromised. Jodee had multiple chances to submit written objections. She knew exactly what she was doing when she chose not to, because she told the court as much. Accordingly, it was error to hear Jodee's oral objections during closing argument and to consider her statements when ruling.

## III.

### THE ERROR WAS PREJUDICIAL

The court's failure to exclude Jodee's objections was prejudicial to Huntington because it unquestionably impacted the court's ruling. The court stated it did not accept "as true anything stated in closing arguments, by any

---

[4] We certainly recognize the potential value, particularly in an emotional case involving self-represented litigants, of creating an opportunity for those litigants to be heard and speak their piece. That was not the error here; the error was in treating previously unheard objections as evidence and according it the weight of evidence.

16

party or attorney, unless such statements are supported by admissible evidence." But it also stated it specifically "considered and gave appropriate weight to the oral objections voiced by [Jodee] during oral arguments, as well as [Jodee's] subsequent written statements." The only "appropriate weight" of her statements, however, should have been no weight at all, because she had long waived any right to object by the date of the closing arguments. Giving her statements any weight prejudiced Huntington.

Further, in its lengthy discussion of "Personal Attacks," the court directly quoted from Jodee's argument and stated "the contentious nature of this litigation . . . colored the vast majority of [Becker's] legal services provided during this relevant period." The court went on to quote Jodee's oral argument as examples of these personal attacks, which was part of the court's reasoning for reducing Becker's fees. Again, the court should never have heard these statements in the first place, and giving them any consideration when reducing the amount of the fee request prejudiced Huntington.

On remand, the court must consider the fee application without reference to any statements or representations by Marty's daughters during closing argument. The court may consider Judy's written objections and appropriate argument strictly limited to the content of those objections. In the alternative, the court may conduct an evidentiary hearing on the second fee account.

17

## DISPOSITION

The order is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. In the interests of justice, each party shall bear its own costs.


MOORE, J.

WE CONCUR:


MOTOIKE, ACTING P J.


DELANEY, J.

18